IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SARAH MILES *et. al*,

          Plaintiffs,

        v.

CLACKAMAS COUNTY *et. al*,

          Defendants.

Case No. 3:23-cv-01805-SB

**OPINION AND ORDER**

---

**BECKERMAN, U.S. Magistrate Judge.**

      Plaintiffs Sarah Miles, appearing as personal representative of the Estate of Derrick Dewayne Clark, Jr. ("Clark"), on behalf of Clark's minor child R.L.C. and minor sibling D.M.M., and in her individual capacity as Clark's mother (together, "Plaintiffs"), allege constitutional claims under 42 U.S.C. § 1983 ("Section 1983"), 42 U.S.C. § 1985 ("Section 1985"), and state law claims against Defendants Clackamas County and individual law enforcement officers Daniel Ferguson ("Ferguson"), Nicholas Adler ("Adler"), Jason Bento ("Bento"), Matthew Brown ("Brown"), Ryan Castro ("Castro"), Hector Campos ("Campos"), Shawn Choe ("Choe"), Aaron Clark ("Officer Clark"), Jordan Ferguson ("J. Ferguson"), Sierra Hancock ("Hancock"), David Heimbuck ("Heimbuck"), Nathan Hulsey ("Hulsey"), Andy Kiesel

("Kiesel"), Kyle Malizia ("Malizia"), Donald McCafferty ("McCafferty"), Beth Mayer
("Mayer"), Jared Reynolds ("Reynolds"), Ryan Rogers ("Rogers"), Peter Robinson
("Robinson"), Hayden Sanders ("Sanders"), Kyle Scott ("Scott"), Samuel Tooze ("Tooze"),
Adam Taylor ("Taylor"), Michael Zacher ("Zacher"), Grant Zaitz ("Zaitz") (together, the
"County Defendants"), Oregon State Trooper Zachary Cole ("Cole"), Oregon City Police Officer
Alexander Mawson ("Mawson"), and Officers Doe I-X (all together, "Defendants"), relating to
Clark's death.[1] (*See generally* First Am. Compl. ("FAC"), ECF No. 26.)

Now before the Court are Cole's, Mawson's,[2] and the County Defendants' separate
motions to dismiss Plaintiffs' FAC. The County Defendants and Cole also move to strike
allegations in Plaintiffs' FAC pursuant to Federal Rule of Civil Procedure ("Rule") 12(f). The
Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 and 1367, and the
parties have consented to proceed before a magistrate judge under 28 U.S.C. § 636. (ECF No.
92.) For the following reasons, the Court GRANTS in part and DENIES in part Defendants'
motions.

## BACKGROUND[3]

Early in the morning on June 18, 2022, Clark was driving a red Pontiac in Clackamas
County. (FAC ¶ 35.) Cole was driving behind Clark and activated his red and blue overhead

---

[1] Plaintiffs do not oppose dismissing defendants Campos and Scott. (Pls.' Opp'n County
Defs.' Mot. Dismiss ("Pls.' Opp'n County's Mot.") at 5 n.1, ECF No. 87.) Accordingly, the
Court dismisses Campos and Scott without prejudice.

[2] Mawson filed his Motion to Dismiss on behalf of Mawson and the Oregon City Police
Department, but the parties later stipulated to Oregon City Police Department's dismissal. (ECF
No. 84.)

[3] The Court takes these facts from the FAC and assumes they are true for the purpose of
reviewing the pending motions. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007)
("[When] ruling on a defendant's motion to dismiss a complaint [the court] must accept as true
all of the factual allegations contained in the complaint.") (simplified); *Daniels-Hall v. Nat'l*

lights to initiate a traffic stop after Clark changed lanes. (*Id.* ¶ 41.) Clark did not pull over, but changed lanes again and drove off. (*Id.* ¶ 42.) Cole did not pursue Clark because it would have violated his training and department policy. (*Id.* ¶ 44.)

After seeing Cole terminate his pursuit, Ferguson started pursuing Clark in a separate vehicle and notified dispatch that Clark had failed to maintain his travel lane and sped away from Cole. (*Id.* ¶¶ 45-46.) Once Ferguson's pursuit began, Cole reactivated his red and blue lights, and the three cars engaged in a high speed chase for approximately two minutes. (*Id.* ¶¶ 49-50, 53.) During the chase, a superior officer ordered Ferguson to stop pursuing Clark because it was raining, dark, and Ferguson had failed to provide status updates. (*Id.* ¶ 51.)

At 12:54 a.m., Clark pulled over, then backed his car up to avoid going into the roadside ditch. (*Id.* ¶¶ 53-54.) Ferguson intentionally rear-ended Clark twice, sending his car into the ditch. (*Id.* ¶¶ 55-56.) Ferguson and Cole exited their vehicles with guns drawn and commanded Clark to "show me your hands." (*Id.* ¶¶ 58-59.) Clark exited the Pontiac and began running away from the officers with a gun in his right hand. (*Id.* ¶¶ 60-63.) Clark threw the gun away as he ran, never having pointed it in the officers' direction. (*Id.* ¶¶ 61, 68.) Cole fired his gun once at Clark and then announced "gun, gun, gun." (*Id.* ¶ 64.) Ferguson also began shooting at Clark as he was running away. (*Id.* ¶ 65.) Cole and Ferguson ran after Clark and saw him throw his gun away during the chase. (*Id.* ¶¶ 66, 69.) Both officers continued shooting at Clark as they pursued him. (*Id.* ¶¶ 70-71.) Ferguson fired the eighth shot which hit Clark and caused him to fall to the

*Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (noting that when reviewing a motion to dismiss for failure to state a claim, a court must "accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-moving party") (citation omitted); *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) ("With a motion to strike, just as with a motion to dismiss, the court should view the pleading in the light most favorable to the nonmoving party.") (citation omitted).

ground. (*Id.* ¶¶ 74-75.) Ferguson reported the incident stating, "shots fired . . . [,] one subject that was running left now [who h]ad a gun . . . [a]nd it looks like he might be hunkered down" across the street near railroad tracks. (*Id.* ¶ 76.) Cole requested that medical personnel come to the scene but neither Cole nor Ferguson rendered aid to Clark. (*Id.* ¶¶ 80, 88.)

At around 1:00 a.m., the remaining individual County Defendants (with the exception of the Special Weapons and Tactics ("SWAT") response team) arrived at the scene but did not render aid to Clark.[4] (*Id.* ¶¶ 89-90.) Mayer heard moaning while standing with Cole and asked; "Is someone yelling for help?" (*Id.* ¶ 92.) Cole told Mayer to "shut up." (*Id.*) Officers at the scene confirmed that a heat signature was coming from the area where Clark was located and initiated a SWAT response team. (*Id.* ¶¶ 95-96.) Around 1:30 a.m., officers using a drone confirmed that Clark was lying motionless in his own blood but could not definitively determine whether Clark was alive. (*Id.* ¶¶ 100, 104.)

At 2:15 a.m., Defendants Castro, Hulsey, Robinson, Sanders, and Mawson (the "SWAT Defendants") gathered in a nearby commercial parking lot in a Mine Resistance Ambush Vehicle where they discovered the gun Clark had discarded.[5] (*Id.* ¶¶ 106, 113.) An officer at the scene informed the SWAT Defendants that Clark had been shot and that someone saw Clark move once, but that nobody had seen him move in approximately eighty minutes. (*Id.* ¶ 107.) The SWAT Defendants discussed deploying gas against Clark and joked that they would

---

[4] Although Plaintiffs allege in the FAC that the SWAT team arrived at the scene at 1:02 a.m. and gathered in a nearby parking lot at 2:15 a.m. (*see* FAC ¶¶ 89, 106), Plaintiffs acknowledge in their response that the SWAT Defendants did not arrive at the scene until 2:15 a.m. (Pls.' Opp'n Mawson's Mot. at 5-6, 9, ECF No. 86.) Plaintiffs shall correct the time of arrival in their second amended complaint.

[5] Plaintiffs reference a Defendant "Hawkins" in their FAC and briefing as part of the SWAT Defendants but never identify that officer or name the officer as a defendant. (*Compare* FAC ¶ 106, defining "SWAT Defendants" *with* FAC ¶ 14, identifying defendants.)

"eventually" have probable cause and that Clark may be "flanking" them. (*Id.* ¶¶ 108, 111-12.) An unidentified SWAT Defendant then made two commands over a speaker that Clark surrender, but Clark did not respond. (*Id.* ¶ 114.) The SWAT Defendants warned Clark in their third announcement that they would use force against him if he did not surrender. (*Id.* ¶ 115.) Clark did not respond. (*Id.*) Sanders then threw two separate explosive devices at Clark, but Clark remained motionless. (*Id.* ¶¶ 116, 119.) During that time, the SWAT Defendants were laughing as they commented that there was "no screamin'," "he's flying supine," "he dead . . . [a]ren't you recording . . . . I don't care," and "he dead . . . a warm dead deer." (*Id.* ¶¶ 119-22.)

After the second explosive device, a SWAT Defendant offered to render aid and instructed Clark to "waive your arms if you can hear us," but Clark did not move. (*Id.* ¶¶ 120-24.) Sanders then threw a third explosive device at Clark, but Clark remained motionless. (*Id.* ¶ 127.) The SWAT Defendants discussed how they thought they hit Clark with the explosives and that he was dead. (*Id.* ¶¶ 129-30.) One SWAT Defendant described Clark's heat signature from the drone as "humanoid." (*Id.* ¶ 133.) The SWAT Defendants continued exchanging comments about how "this ole boy is dead" and that they were "going to do some janky shit and get it done." (*Id.* ¶¶ 135-36.)

Another unidentified SWAT Defendant warned Clark that they would send a dog to bite him unless he surrendered. (*Id.* ¶ 138.) Within thirty seconds, one SWAT Defendant suggested "let's just bite him already," and another stated "[t]his ole boy is no longer with us." (*Id.* ¶¶ 139-40.) A SWAT Defendant stated that "[h]e is dead," to which another laughed and replied, "he might be laying lower than a snake in a top hat as they say." (*Id.* ¶ 142.) The SWAT Defendants made another announcement threatening to use additional force against Clark, including a police dog to bite him, if he did not come out with his hands up. (*Id.* ¶¶ 145-46.) A SWAT Defendant

using a drone said, "I don't think he is hiding" and suggested Clark was dead or unconscious. (*Id.* ¶ 151.) At 2:52 a.m., McCafferty released a police dog that bit Clark's body. (*Id.* ¶ 153.) At that point, the SWAT Defendants discussed that Clark had been "smoked" and was dead. (*Id.* ¶¶ 153-54.) Clark's time of death was reported as 2:53 a.m. (*Id.* ¶ 155.)

In total, approximately two hours elapsed from when Ferguson shot Clark and when Clark was pronounced dead. (*Id.* ¶ 156.) During that time, Plaintiffs allege that Clark never received any aid and, if Defendants had provided aid, Clark could have survived. (*Id.* ¶ 157.) Plaintiffs further allege that Defendants used excessive force and failed to render aid as part of a county-wide, "unwritten culture or custom that disregards the civil rights of non-whites." (*Id.* ¶ 34.)

## LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## DISCUSSION

Plaintiffs assert ten claims against three sub-groups of defendants. (*See generally* FAC.) Plaintiffs assert five claims alleging that Clackamas County is liable for its officers' use of excessive force, failure to provide medical care, causing Plaintiffs' loss of society and companionship, assault/battery, and negligence. (*See id.* ¶¶ 163-89.) Plaintiffs assert a sixth

claim alleging that Cole, Ferguson, Sanders, and McCafferty are liable for violating Clark's constitutional rights by using excessive force. (*See id.* ¶¶ 190-91.) Plaintiffs assert four claims alleging that all individually named defendants are liable for failing to provide medical care, causing Plaintiffs' loss of society and companionship, intentional discrimination, and conspiracy to interfere with Clark's civil rights. (*See id.* ¶¶ 192-205.)

Three different groups of defendants filed separate motions to dismiss. Mawson moves to dismiss Plaintiffs' four claims against him as an individually named defendant. (*See generally* Mawson's Mot. Dismiss ("Mawson's Mot."), ECF No. 72.) Cole moves to dismiss Plaintiffs' tenth claim for conspiracy and moves to strike portions of Plaintiffs' FAC pursuant to Rule 12(f). (*See generally* Cole's Mot. Dismiss & Strike ("Cole's Mot."), ECF No. 78.) The County Defendants move to dismiss Plaintiffs' conspiracy claims against all Defendants, and Plaintiffs' constitutional claims against most of the individually named defendants. (*See* County Defs.' Mot. Dismiss & Strike ("County's Mot.") at 2-3, ECF No. 76.) The County Defendants further move to dismiss Plaintiffs' claims for excessive force, failure to provide medical care, loss of society and companionship, and negligence against Clackamas County. (*See id.* at 3.) The County Defendants include in their motion to dismiss a motion to strike portions of Plaintiffs' FAC pursuant to Rule 12(f). (*See id.* at 4.)

## I. REQUEST FOR CONVERSION

Plaintiffs include in their FAC references to a pathologist's grand jury testimony relating to this case and pictures from the scene taken from various officers' body worn camera ("BWC") footage. (*See generally* FAC.) Mawson argues that these additions to the FAC constitute extrinsic documents not incorporated in the complaint and requests, pursuant to Rule 12(d), that the Court convert that portion of Mawson's motion to dismiss (Count 7–Failure to Provide Medical Care) into a motion for summary judgment. (Mawson's Mot. at 3.) Mawson offers the

pathologist's grand jury testimony transcript and the complete copy of Mawson's BWC footage in support of his request for conversion. (*Id.*)

Plaintiffs oppose Mawson's requested conversion, arguing that it would be improper and premature for the Court to convert Mawson's motion to dismiss into a motion for summary judgement at the pleading stage. (*See* Pls.' Opp'n Mawson's Mot. at 3-5.) Plaintiffs request that the Court either exclude the extrinsic evidence or provide all parties with notice and a reasonable opportunity to respond with additional extrinsic evidence. (*See id.* at 5.)

Generally, "district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)[.]" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). "[W]hen presented with 'matters outside the pleadings' in connection with a motion to dismiss for failure to state a claim under Rule 12(b)(6) . . . , the district court may choose to exclude such extrinsic matters and address the motion under the applicable Rule 12 standards, or it may convert the motion into 'one for summary judgment under Rule 56.'" *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1059 (9th Cir. 2023) (quoting FED. R. CIV. P. 12(d)).

The Court declines to convert Mawson's motion to dismiss into a motion for summary judgment. *See Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1117 (9th Cir. 2018) ("As an initial matter, the district court was not required to convert the [defendant]'s Rule 12(b)(6) motion to a summary judgment motion . . . because it did not consider any material outside the pleadings."). Thus, the Court will not consider Mawson's extrinsic evidence and will analyze Plaintiffs' FAC under the applicable Rule 12 standard. *Cf. Lodge 1380, Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Express & Station Emps. (BRAC) v. Dennis*, 625 F.2d 819, 825 n.6 (9th Cir. 1980) ("If the district court did render summary judgment as [the defendant] contends, we would

. . . reverse the dismissal because the district court gave [the plaintiff] no opportunity to submit counter affidavits." (first citing *Winfrey v. Brewer*, 570 F.2d 761, 764 (8th Cir. 1978); and then citing *Costen v. Pauline's Sportswear, Inc.*, 391 F.2d 81, 85 n.5 (9th Cir. 1968))).

## II.    FAILURE TO PROVIDE MEDICAL CARE

Mawson and the County Defendants move to dismiss Plaintiffs' Section 1983 claim for failure to provide medical care to Clark in violation of his Fourteenth Amendment rights. (*See* Mawson's Mot. at 4-7; County's Mot. at 4-7.) Specifically, Mawson argues that the Court should dismiss him from Plaintiffs' failure to provide medical care claim because he arrived at the scene after Clark died and a large fence prevented him from rendering aid to Clark. (*See* Mawson's Mot. at 4-7.) The County Defendants argue that the Court should dismiss most of the individual County Defendants from Plaintiffs' failure to provide medical care claim because Plaintiffs fail to plead facts supporting anything other than their mere presence at the scene, which is insufficient to support a Section 1983 claim. (*See* County's Mot. at 4-7.)

### A.    Applicable Law

"As a general rule, members of the public have no constitutional right to sue public employees who fail to protect them against harm inflicted by third parties." *Hernandez v. City of San Jose*, 897 F.3d 1125, 1133 (9th Cir. 2018) (quoting *L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir. 1992)) (simplified). "An exception to the rule applies when government employees affirmatively place the plaintiff in a position of danger, that is, where their actions create or expose an individual to a danger which he or she would not have otherwise faced." *Id.* (simplified).

The "state-created danger" exception has two elements. *See Murguia v. Langdon*, 61 F.4th 1096, 1111 (9th Cir. 2023). First, there must be "affirmative conduct on the part of the state in placing the plaintiff in danger." *Id.* (quoting *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th

Cir. 2011)). Second, the state must act "with deliberate indifference to a known or obvious danger." *Id.* (simplified); *see also id.* at 1117 n.16 ("The deliberate indifference standard is satisfied when a state actor 'recognizes the unreasonable risk and actually intends to expose the plaintiff to such risks without regard to the consequences to the plaintiff.'" (quoting *L.W. v. Grubbs*, 92 F.3d 894, 899 (9th Cir. 1996))).

> **B.    Analysis**

>> **1.    Mawson**

Mawson moves to dismiss Plaintiffs' failure to provide medical care claim, arguing that Plaintiffs' claim fails because the pathologist's grand jury testimony establishes that Clark died before Mawson arrived at the scene, and therefore rendering aid would have been futile. (*See* Mawson's Mot. at 5-6.) Mawson further argues that a large fence separated him from Clark and prevented him from physically accessing Clark even if medical aid was appropriate. (*See id.* at 7.)

Plaintiffs respond that the Court should exclude the pathologist's testimony and that the facts they allege, taken as true, are sufficient to support that Clark did not die instantly from his injuries and was alive when Mawson arrived at the scene. (Pls.' Opp'n Mawson's Mot. at 5-6.) In the alternative, Plaintiffs argue that if Clark was dead at the time the SWAT Defendants (including Mawson) arrived at the scene, their subsequent use of force against Clark involving explosives and a canine constituted unlawful handling of the deceased under OR. REV. STAT. § 161.155 and Oregon common law. (*See id.* at 6.)

As discussed above, the Court does not consider the pathologist's testimony and Mawson's BWC footage at the pleading stage. Plaintiffs allege that an officer at the scene informed the SWAT Defendants, including Mawson, when they arrived at 2:15 a.m. that Clark was alive but had been shot and had not moved in over an hour. (*See* FAC ¶¶ 106-07.) Plaintiffs

further allege that the SWAT Defendants made announcements offering to render aid to Clark if he surrendered. (*Id.* ¶¶ 123, 147.) Plaintiffs allege that Clark died from his injuries at 2:53 a.m., and that he could have survived had he received aid. (*Id.* ¶ 155-57.)

To satisfy the first element of the state-created danger analysis, the Court must "examine whether the officers left the person in a situation that was more dangerous than the one in which they found him." *Murguia*, 61 F.4th at 1111 (quoting *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir. 2000)). Plaintiffs' allegations support that Ferguson's and Cole's affirmative act of shooting Clark placed him in danger. (*See id.* ¶ 74.)

With respect to the second element, Plaintiffs allege that Mawson was aware of Clark's serious injuries and intentionally failed to summon or render aid. (*See id.* ¶¶ 56-74.) These allegations, accepted as true and construed in the light most favorable to Plaintiffs, are sufficient to support Plaintiffs' claim against Mawson for failure to render aid in violation of Clark's Fourteenth Amendment rights. *See Murguia*, 61 F.4th at 1112 ("This court and other circuits have applied the state-created danger exception in situations where an officer abandoned the plaintiff in a dangerous situation, separated the plaintiff from a third-party who may have offered assistance, or prevented other individuals from rendering assistance to the plaintiff.") (collecting cases); *see also Lopez v. Swaney*, 741 F. App'x 486, 487 (9th Cir. 2018) (finding that a disputed issue of fact existed regarding whether the officer acted with deliberate indifference when he "denied Plaintiff access to treatment even though he had reason to think that Plaintiff was receiving no care at all" because "[t]he denial of medical care in the face of an obvious emergency constitutes deliberate indifference" (citing *Hoptowit v. Ray*, 682 F.2d 1237, 1259 (9th Cir. 1982), *overruled on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995))); *Maxwell v. County of San Diego*, 708 F.3d 1075, 1083 (9th Cir. 2013) (finding that the officers were

deliberately indifferent to the decedent's medical need because "[i]t was obvious that delaying a bleeding gun shot victim's ambulance increased the risk of death"); *Wallisa v. City of Hesparia*, 369 F. Supp. 3d 990, 1018-19 (C.D. Cal. 2019) ("As the Ninth Circuit has explained . . . [i]t is doubtful, for example, that any circumstance would permit a denial of access to emergency medical care. . . . Delays of even a few minutes in seeking care for life-threatening injuries can constitute deliberate indifference."); *Dean v. City of Fresno*, 546 F. Supp. 2d 798, 812 (E.D. Cal. 2008) ("When a defendant is actually aware of a substantial risk of serious harm, deliberate indifference may be reflected through either action or inaction such as denial, delay, or intentional interference with medical treatment." (first citing *Lolli v. County of Orange*, 351 F.3d 410, 419 (9th Cir. 2003); and then citing *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002))). Accordingly, the Court denies Mawson's motion to dismiss Plaintiffs' failure to provide medical care claim.

### 2.    The Individual County Defendants

The County Defendants move to dismiss Plaintiffs' failure to provide medical care claim, arguing that Plaintiffs have failed sufficiently to allege facts to support a finding that most of the individual County Defendants were "integral participants" in the alleged constitutional violations. (*See* County's Mot. at 4-7.) The County Defendants argue that the officers' mere presence at the scene is insufficient to support a Section 1983 claim. (*See id.* at 5.)

Plaintiffs allege that most of the individual County Defendants arrived at the scene at 1:02 a.m. (FAC ¶ 89.) Plaintiffs' allegations, accepted as true and construed in the light most favorable to Plaintiffs, create a reasonable inference that the individual County Defendants were communicating and that each officer present on the scene was aware that Clark was critically injured. (*See, e.g.*, *id.* ¶ 76, Ferguson reported the incident; *id.* ¶ 98, Cole discussed the incident with Malizia; *id.* ¶ 100, Officer Clark and Tooze used a drone to confirm Clark is lying in his

own blood; *id.* ¶ 106, an unnamed Clackamas County Sheriff's Office ("CCSO") perimeter deputy informed the SWAT Defendants that Clark was shot and had not moved in over an hour.) Plaintiffs further allege that Clark did not receive aid in the approximately two hours that elapsed from when Clark was shot to when he was pronounced dead. (*See id.* ¶ 156.)

Viewing these allegations in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have plausibly alleged that the individual County Defendants were aware that Clark was injured and failed to render or summon aid. *See Maddox v. City of Los Angeles*, 792 F.2d 1408, 1415 (9th Cir. 1986) ("Due process requires that police officers seek the necessary medical attention for a detainee when he or she has been injured while being apprehended by either promptly summoning the necessary medical help or by taking the injured detainee to a hospital.") (citation omitted); *Wallisa*, 369 F. Supp. 3d at 1018-19 ("As the Ninth Circuit has explained . . . [i]t is doubtful, for example, that any circumstance would permit a denial of access to emergency medical care. . . . Delays of even a few minutes in seeking care for life-threatening injuries can constitute deliberate indifference."). Accordingly, the Court denies the County Defendants' motion to dismiss Plaintiffs' failure to render aid claims against the individual County Defendants.

## III.    LOSS OF SOCIETY AND COMPANIONSHIP

Mawson and the County Defendants move to dismiss Plaintiffs' Section 1983 loss of society and companionship claim.[6] (Mawson's Mot. at 7-8; County's Mot. at 4-7.) Specifically, Mawson argues that the Court should dismiss him from Plaintiffs' familial association claim because he was not involved in causing Clark's death. (Mawson's Mot. at 7-8.) The County

---

[6] Only Plaintiffs Sarah Miles, R.L.C., and D.M.M. assert claims for loss of society and companionship. (FAC ¶ 195.)

Defendants argue that the Court should dismiss most of the individual County Defendants from Plaintiffs' familial association claim because Plaintiffs fail to plead facts supporting anything other than their mere presence at the scene. (*See* County's Mot. at 4-7.)

### A. Applicable Law

The Ninth Circuit has recognized "that an individual can assert a 'Fourteenth Amendment claim for loss of companionship and familial association' in a police excessive force case." *Perkins v. Edgar*, No. 21-55552, 2022 WL 14476272, at *2 (9th Cir. Oct. 25, 2022) (quoting *Ochoa v. City of Mesa*, 26 F.4th 1050, 1056 (9th Cir. 2022)). For familial association claims, courts must "look to whether the officers' conduct deprived [Plaintiffs] of [their] familial interest in a manner that 'shocks the conscience.'" *Peck v. Montoya*, 51 F.4th 877, 893 (9th Cir. 2022) (quoting *Hayes v. County of San Diego*, 736 F.3d 1223, 1230 (9th Cir. 2013)).

The Ninth Circuit applies one of two standards to determine whether defendants' conduct "shocks the conscience," depending on the circumstances. *Id.* When the defendants are in a quickly escalating situation that requires a "snap judgment," courts will apply a "purpose-to-harm standard" which requires the plaintiffs to demonstrate that the defendants acted with "a *purpose to harm* unrelated to legitimate law enforcement objectives." *Id.* (citing *Hayes*, 736 F.3d at 1230). When the defendants "have ample time to correct their obviously mistaken [conduct] . . . but nonetheless fail to do so, the [decedent]'s family members need only plead deliberate indifference to state a claim under the due process right to familial association." *Porter v. Osborn*, 546 F.3d 1131, 1139 (9th Cir. 2008) (citing *Lee*, 250 F.3d at 684). In this context, the Ninth Circuit defines "deliberate indifference" as "the conscious or reckless disregard of the consequence of one's acts or omissions." *Tatum v. Moody*, 768 F.3d 806, 821 (9th Cir. 2014) (quoting *Gantt v. City of Los Angeles*, 717 F.3d 702, 708 (9th Cir. 2013)). "It entails something

more than negligence but . . . less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.*

### B. Analysis

#### 1. Mawson

Mawson moves to dismiss Plaintiffs' familial association claim, arguing that Mawson cannot be liable for any loss of society or companionship resulting from Clark's death because Mawson was not personally involved in the shooting and did not arrive at the scene until after Clark's death. (Mawson's Mot. at 7-8.) Mawson agrees that "deliberate indifference" is the applicable standard. (*See* Mawson's Reply Supp. Mot. Dismiss ("Mawson's Reply") at 4, ECF No. 90, "[B]ecause he arrived well after the fact, Mawson agrees that the 'deliberate indifference' standard applies.").

Plaintiffs allege that when Mawson arrived at 2:15 a.m., he was informed that Clark was alive but had been shot and sustained serious injuries (*see* FAC ¶¶ 106-07); Mawson was at the scene and aware of Clark's injuries for at least forty minutes before Clark's death (*see id.* ¶¶ 106, 155); Mawson failed to summon or render aid after being told that Clark had not moved since being shot nearly eighty minutes prior (*see id.* ¶ 107); Mawson failed to summon or render aid after the SWAT Defendants used three explosives against Clark (*see id.* ¶¶ 116-19, 127); and Clark could have survived if the officers at the scene had provided him with medical aid. (*See id.* ¶ 157.) Viewing these allegations in the light most favorable to Plaintiffs, Plaintiffs have plausibly alleged that Mawson was aware of Clark's serious medical need and responded with deliberate indifference. *See Scott v. Smith*, 109 F.4th 1215, 1228 (9th Cir. 2024) ("An officer acts with deliberate indifference by disregarding a known or obvious consequence of their actions." (citing *Nicholson v. City of Los Angeles*, 935 F.3d 685, 693 (9th Cir. 2019))); *Farmer v. Brennan*, 511 U.S. 825, 837, 842 (1994) (holding that the deliberate indifference standard

requires that the "official knows of and disregards an excessive risk . . . [but] a factfinder may conclude that [an] official knew of a substantial risk from the very fact that the risk was obvious"); *cf. Maddox*, 792 F.2d at 1415 ("Due process requires that police officers seek the necessary medical attention for a detainee when he or she has been injured while being apprehended by either promptly summoning the necessary medical help or by taking the injured detainee to a hospital.") (citation omitted).

Accordingly, the Court denies Mawson's motion to dismiss Plaintiffs' Section 1983 familial association claim.

### 2. The Individual County Defendants

For the reasons discussed in Section II(B)(2), the Court finds that Plaintiffs have plausibly alleged that the individual County Defendants were aware of Clark's serious medical need and responded with deliberate indifference. Accordingly, the Court denies the County Defendants' motion to dismiss Plaintiffs' familial association claims against the individual County Defendants.

## IV. INTENTIONAL DISCRIMINATION

Plaintiffs assert a claim against all of the individual defendants for "intentional discriminatory treatment based on [Clark's] race and national origin in violation of the Fourteenth Amendment of the U.S. Constitution and of 42 U.S.C. §§ 1981 and 1983." (FAC ¶ 197.) Consistent with Plaintiffs' briefing, the Court construes this claim as a Section 1983 equal protection claim. (*See, e.g.*, Pls.' Opp'n County's Mot. at 25, reciting the requirements for a claim "under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment").

Mawson and the County Defendants move to dismiss Plaintiffs' Section 1983 equal protection claim. (Mawson's Mot. at 8-9; County's Mot. at 16.) Mawson argues that Plaintiffs

inappropriately brought that claim under the Fourteenth Amendment, and that they must instead bring it under the Fourth Amendment because they seek damages relating to an alleged unconstitutional use of force. (Mawson's Reply at 7-10.) The County Defendants argue that the Court should dismiss all individual County Defendants from Plaintiffs' equal protection claim because Plaintiffs fail to plead facts "linking specific defendants to specific discriminatory statements, acts, or omissions that might create an inference of discriminatory intent." (County Defs.' Reply County Defs.' Mot. Dismiss ("County's Reply") at 8-9, ECF No. 88.)

### A. Applicable Law

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *Boardman v. Inslee*, 978 F.3d 1092, 1117 (9th Cir. 2020) (simplified). "To state a claim under . . . § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment[,] a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Shooter v. Arizona*, 4 F.4th 955, 960 (9th Cir. 2021) (quoting *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013)).

### B. Analysis

#### 1. Mawson

Mawson moves to dismiss Plaintiffs' "intentional discrimination" claim on the ground that Plaintiffs must bring their claim under the Fourth Amendment because they seek damages resulting from an unconstitutional use of force. (Mawson's Mot. at 8.) The Court disagrees.

As discussed above, the Court construes Plaintiffs' Section 1983 "intentional discrimination" claim as an equal protection claim. *See Schreiner v. City of Gresham*, 681 F. Supp. 2d 1270, 1276-77 (D. Or. 2010) (analyzing the plaintiffs' Equal Protection claim against

officers for allegedly using force based on discriminatory animus under the Fourteenth

Amendment); *see also Elliot v. City of Eugene*, No. 6:16-cv-00022-MC, 2017 WL 2174956, at

*6 (D. Or. May 17, 2017) (same), *aff'd*, 787 F. App'x 419 (9th Cir. 2019). Therefore, Plaintiffs

"must prove that the defendants acted in a discriminatory manner and that the discrimination was

intentional." *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000) (citing *Fed.*

*Deposit Ins. Corp. v. Henderson*, 940 F.2d 465, 471 (9th Cir. 1991)).

As further discussed in Section V(B)(1)(a) below, the Court finds that Plaintiffs plausibly

allege that the SWAT Defendants, including Mawson, conspired intentionally to use excessive

force against Clark based on racial animus. Therefore, the Court denies Mawson's motion to

dismiss Plaintiffs' Section 1983 equal protection claim.

### 2.    The Individual County Defendants

With respect to the remaining individual County Defendants (except for the SWAT

Defendants, for the reasons discussed in Section V(B)(2)(c), the Court finds that Plaintiffs have

failed to plead facts supporting that those individual County Defendants' actions were motivated

by racial animus.

Accordingly, the Court dismisses, with leave to amend, Plaintiffs' equal protection claims

against the remaining individual County Defendants (i.e., Adler, Bento, Brown, Choe, J.

Ferguson, Hancock, Reynolds, Rogers, Taylor, Zacher, Mayer, Heimbuck, Zaitz, Malizia, Clark,

Scott, Kiesel, Tooze, Ferguson, and McCafferty). The Court denies the County Defendants'

motion to dismiss Plaintiffs' Section 1983 equal protection claims against the SWAT Defendants

(Castro, Hulsey, Robinson, and Sanders).

## V.    CONSPIRACY

In their FAC, Plaintiffs allege that all individually named law enforcement officers and

Doe defendants are liable under Section 1985 for conspiring to deprive Clark of "his rights under

the Fourth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Due

Process clause of the Fourteenth Amendment" with "racial animus," which caused Clark's death.

(FAC ¶¶ 199-205.)

Although never stated directly, based on the briefing it appears that Plaintiffs allege three

separate Section 1985 conspiracies: (1) a conspiracy between Cole and Ferguson "to use

excessive force against Mr. Clark in violation of the Fourth Amendment" (Pls.' Opp'n Cole's

Mot. Dismiss ("Pls.' Opp'n Cole's Mot.") at 6, ECF No. 85), (2) a conspiracy between the

SWAT Defendants "to batter Mr. Clark with explosive devices, and to maul Mr. Clark with a

canine in violation of the Fourth and Fourteenth Amendments to the United States Constitution"

(Pls.' Opp'n Mawson's Mot. at 16), and (3) a conspiracy between all of the individual law

enforcement officers and Doe defendants at the scene "to refuse to render aid to Mr. Clark in

violation of the Fourteenth Amendment[.]" (Pls.' Opp'n Cole's Mot. at 6.)

At oral argument, Plaintiffs represented that they "have pled two conspiracies . . . the first

conspiracy would be the pursuit and the shooting" and "the second conspiracy would be . . . after

the shooting." (Mot. Dismiss. Hr'g Tr. at 29, Oct. 22, 2024, ECF No. 94.) Plaintiffs also

acknowledged in their briefing and at oral argument that although they pled the alleged

conspiracies under Section 1985, they could plead some or all of the alleged conspiracies under

Section 1983. (*See id.* at 27, "[The conspiracy claim] should be a 1985/1983 conspiracy . . . [and]

with respect to the SWAT Defendants, . . . given the language that those officers used as they

used force, we believe that we have pled a sufficient conspiracy claim regarding racial animus

and racial discrimination towards [Clark]."; Pl.'s Opp'n County's Mot. at 17 n.75, "Plaintiffs

have not specifically pled a conspiracy pursuant to § 1983, however, the allegations in the

conspiracy section of the complaint do plead a § 1983 conspiracy claim. . . . Should the Court

deem that a more specific pleading of a § 1983 conspiracy is required, Plaintiffs seek leave to so amend.") The Court will analyze the three conspiracies Plaintiffs allege in their FAC under Section 1985.

### A.    Applicable Law

"Although both [Section] 1983 and [Section] 1985 are civil rights statutes, they have different origins." *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980). "Section 1983 is based upon the fourteenth amendment and thus concerns deprivations of rights that are accomplished under the color of state law." *Id.* (citations omitted). "Section 1985, on the other hand, is derived from the thirteenth amendment and covers all deprivations of equal protection of the laws . . . regardless of its source." *Id.* (citations omitted).

"[T]o make out a violation of § 1985(3) . . . the plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 828-29 (1983).

With respect to the first element, "[a] mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988). Rather, plaintiffs "must allege facts to support the allegation that defendants conspired together." *Id.* The Ninth Circuit described the pleading requirements for constitutional conspiracies as follows:

> Such an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants. For example, a showing that the alleged conspirators have committed acts that

are unlikely to have been undertaken without an agreement may allow a jury to infer the existence of a conspiracy. Whether defendants were involved in an unlawful conspiracy is generally a factual issue and should be resolved by the jury, so long as there is a possibility that the jury can infer from the circumstances (that the alleged conspirators) had a meeting of the minds and thus reached a[n] understanding to achieve the conspiracy's objectives. To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.

*Mendocino Env't Ctr. v. Mendocino County*, 192 F.3d 1283, 1301-02 (9th Cir. 1999)

(simplified).

With respect to the second element, Plaintiffs must allege facts plausibly to suggest that two more or persons "shared a goal" of violating, or reached an agreement to violate, Clark's constitutional rights. *O'Handley v. Weber*, 62 F.4th 1145, 1162-63 (9th Cir. 2023) (affirming dismissal of conspiracy claims against the California Secretary of State under Rule 12(b)(6), noting "there is no unconstitutional conspiracy without this shared specific intent," and explaining that the plaintiff's claim was "fatal[ly] flaw[ed]" because he did not allege that the California Secretary of State and a private entity "shared a goal of violating his or anyone else's constitutional rights"), *cert. denied*, 144 S. Ct. 2715 (2024); *see also Ogunsalu v. Sweetwater Union High Sch. Dist.*, 745 F. App'x 757, 758 (9th Cir. 2018) (affirming dismissal of a conspiracy claim and noting that a conspiracy under Section 1985 requires that the defendants reach an agreement with one another).

"[A] required element of a § 1985 claim is that the plaintiff be a member of a protected class and the deprivation of civil rights have been motivated by animus toward that class." *Sanford v. Klamath County*, No. 1:24-cv-00942-AA, 2024 WL 4664485, at *3 (D. Or. Nov. 4, 2024) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). "Ninth Circuit precedent requires at a minimum that the [plaintiffs] plead with particularity which defendants conspired, how they conspired and how the conspiracy led to a deprivation of [the plaintiff's] constitutional

rights. *Dauven v. U.S. Bancorp*, No 3:13-cv-00844-AC, 2015 WL 2239407, at *7 (D. Or. May 12, 2015), *aff'd*, 698 F. App'x 436 (9th Cir. 2017).

### B.    Analysis

#### 1.    Mawson

Plaintiffs allege two conspiracies that implicate Mawson. Specifically, Mawson is implicated in (1) the alleged conspiracy between the SWAT Defendants to use excessive force against Clark and (2) the alleged conspiracy between all officers at the scene to deprive Clark of medical aid.

Mawson moves to dismiss Plaintiffs' conspiracy claims, arguing that it is impossible for Plaintiffs to sustain a claim for a conspiracy to deprive Clark of his civil rights because Clark was never deprived of any civil rights. (Mawson's Reply at 10-11.) Further, Mawson argues that Plaintiffs fail sufficiently to allege facts supporting that Mawson entered into an agreement to deprive Clark of his rights based on racial animus. (Mawson's Mot. at 9-10.)

#### a.    The SWAT Defendants' Excessive Force

Plaintiffs allege that the SWAT Defendants gathered in a nearby parking lot and discussed that they would "eventually" have probable cause to engage Clark, and potentially deploying tear gas against Clark using a turret. (*See* FAC ¶¶ 108-12.) Plaintiffs allege that after throwing an explosive device at Clark, the SWAT Defendants continued to use explosives and a canine despite Mawson and other unidentified SWAT Defendants suspecting that Clark was dead. (*See id.* ¶¶ 122, 129, 140.) Plaintiffs allege that during the continued use of force, the SWAT Defendants referred to Clark as "ole boy," compared him to "a warm dead dear," and commented that they were "going to do some janky shit and get it done." (*Id.* ¶¶ 122, 135-36, 140.)

///

Viewing these allegations in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have plausibly alleged that the SWAT Defendants had a meeting of the minds and shared an objective to use excessive force against Clark based, at least in part, on racial animus. Specifically, the Court finds that the allegations that the SWAT Defendants met and discussed using force against Clark supports a reasonable inference that the SWAT Defendants had a meeting of the minds and shared an objective to use excessive force against Clark. *See Mendocino Env't Ctr.*, 192 F.3d at 1301-02 ("Whether defendants were involved in an unlawful conspiracy is generally a factual issue and should be resolved by the jury, so long as there is a possibility that the jury can infer from the circumstances (that the alleged conspirators) had a meeting of the minds and thus reached a[n] understanding to achieve the conspiracy's objectives."); *see also Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (reversing the district court's grant of summary judgment in an officer's favor on the plaintiff's conspiracy claim because "[a] meeting of the minds can be inferred from circumstantial evidence, and [the officer]'s involvement . . . , particularly in formulating and directing the tactical plan, is sufficient for a reasonable factfinder to conclude it was 'unlikely to have been undertaken without an agreement,' of some kind between the defendants" (citing *Mendocino Env't Ctr.*, 192 F.3d at 1301)); *Savage v. City of Whittier*, 689 F. Supp. 3d 781, 815 (C.D. Cal. 2023) (denying the defendant's motion for summary judgment on the plaintiff's conspiracy claim because evidence of the officers communicating about an "arrest plan" and the defendants' coordinated action detaining the plaintiff "could lead a reasonable jury to conclude that Individual Defendants had a meeting of the minds to violate [the plaintiff]'s First and Fourth Amendment rights").

///

Viewing the alleged facts in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have plausibly alleged that the SWAT Defendants' comments, including referring to Clark as "ole boy," comparing him to "a warm dead dear," and stating that they were "going to do some janky shit and get it done," were racially derogatory. *See Emanuel Displaced Persons Ass'n 2 v. City of Portland*, 704 F. Supp. 3d 1088, 1107 (D. Or. 2023) (finding that the plaintiff sufficiently pled a Section 1985 claim in part because the term "undesirable encroachments" used in a property report could be "read as racially coded language that refers to Black neighbors"); *Ee v. Washington County*, No. 3:07-cv-01728-HA, 2010 WL 680924, at *5-6 (D. Or. Feb. 25, 2010) (denying summary judgment on the plaintiff's Section 1985 claim because the "racial tone of some complaints about plaintiff, and racist behavior tolerated by [the defendant] . . . [create] a question of material fact . . . regarding defendants' motivations"), *aff'd*, 423 F. App'x 757 (9th Cir. 2011); *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987) ("By pleading that racial slurs were directed against him, [the plaintiff] has made an allegation of racial animus sufficient to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6)."); *see also King v. City of Eastpointe*, 86 F. App'x 790, 803 (6th Cir. 2003) ("The word 'boy' as used by [the officer] in this context could definitely be interpreted as racially derogatory. . . . Although the question is close, the evidence of the use of a possibly racial epithet raises an issue of fact as to whether [the officer]'s actions toward [the plaintiffs] following the stop were based on race."); *Booker v. Budget Rent-A-Car Sys.*, 17 F. Supp. 2d 735, 744 (M.D. Tenn. 1998) (finding that a manager's "disproportionate abusive treatment of [a black employee], coupled with the racially discriminatory statements allegedly made by [the manager,] . . . ." including "whipping boy,"

"taken as true, could convince a reasonable juror that [the employee] was harassed because of his race").[7]

For these reasons, the Court finds that Plaintiffs have plausibly alleged a Section 1985 conspiracy claim against the SWAT Defendants. *See Emanuel Displaced Persons Ass'n 2*, 704 F. Supp. 3d at 1107 ("'[W]hen the entire factual context is considered,' Plaintiffs have 'nudged' their conspiracy claim 'across the line from conceivable to plausible.'" (quoting *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017))); *see also Mendocino Env't Ctr.*, 192 F.3d at 1302 ("[D]irect evidence of improper motive or an agreement among the parties to violate a plaintiff's constitutional rights will only rarely be available. Instead, it will almost always be necessary to infer such agreements from circumstantial evidence or the existence of joint action."); *cf. Cordova v. State Farm Ins. Cos.*, 124 F.3d 1145, 1149 (9th Cir. 1997) ("[A]n egregious and bigoted insult . . . constitutes strong evidence of discriminatory animus[.]"); *DeWalt Prods., Inc. v. City of Portland*, No. 3:14-cv-01017-AC, 2019 WL 4045659, at *56 (D. Or. Aug. 26, 2019) ("[C]omments depicting a racial stereotype may be evidence of racial discrimination, particularly when linked to the objectionable decision." (citing *Lindahl v. Air France*, 930 F.2d 1434, 1439 (9th Cir. 1991))), *aff'd*, 829 F. App'x 226 (9th Cir. 2020). Accordingly, the Court denies Mawson's motion to dismiss Plaintiffs' Section 1985 claim alleging that the SWAT Defendants conspired to use excessive force against Clark based on racial animus.

### b.    Failure to Render Aid

Plaintiffs argue that their allegations "plausibly suggest that Mawson and other CCSO deputies conspired to refuse to provide Mr. Clark with aid[.]" (Pls.' Opp'n Mawson's Mot. at

---

[7] Mawson does not dispute that Plaintiffs plausibly allege an act in furtherance of the conspiracy that caused an injury or deprivation of rights.

16.) As discussed in Section V(B)(2)(c), the Court finds that Plaintiffs fail to allege facts that support a reasonable inference that the alleged conspiracy between all officers at the scene to deprive Clark of medical aid was based on racial animus.

### 2.    The Individual County Defendants

All three of the alleged conspiracies implicate the remaining individual County Defendants.[8] Specifically, the individual County Defendants are implicated in (1) the alleged conspiracy between Cole and Ferguson to use excessive force against Clark, (2) the alleged conspiracy between the SWAT Defendants to use excessive force against Clark, and (3) the alleged conspiracy between all of the officers at the scene to deprive Clark of aid for his injuries.

### a.    Ferguson's Excessive Force

As further discussed in Section V(B)(3)(a), the Court finds that Plaintiffs fail to allege facts supporting that Ferguson's and Cole's shared objective to use excessive force against Clark was motivated by racial animus. Accordingly, the Court dismisses, with leave to amend, Plaintiffs' Section 1985 claim alleging that Ferguson conspired with Cole to use excessive force based on racial animus.

### b.    The SWAT Defendants' Excessive Force

As discussed above, the Court finds the alleged facts, accepted as true and viewed in the light most favorable to Plaintiffs, are sufficient to support that the SWAT Defendants conspired to use excessive force against Clark. With respect to the County Defendants' argument that

---

[8] Plaintiffs do not oppose dismissing from the conspiracy claims without prejudice the following defendants: Campos, Scott, Adler, Bento, Brown, Choe, J. Ferguson, Hancock, Reynolds, Rogers, Taylor, Heimbuck, Zacher, Tooze, and Officer Clark. (*See* Pls.' Opp'n County's Mot. at 5 n.2.) Therefore, the Court dismisses those parties without prejudice. The remaining defendants named in Plaintiffs' conspiracy claims include the following: Cole, Ferguson, the SWAT Defendants (i.e., Castro, Hulsey, Robinson, Sanders, and Mawson), Kiesel, Malizia, McCafferty, Mayer, and Zaitz.

Plaintiffs' failure specifically to identify which SWAT Defendant made each comment is fatal to their claim, the Court disagrees. *See Mendocino Env't Ctr. v. Mendocino County*, 14 F.3d 457, 463 (9th Cir. 1994) (denying the FBI's motion to dismiss and rejecting the argument that allegations relating "to 'F.B.I. Agents' without identifying them by name" was insufficient because that "is a question only the FBI Agents can answer" (citing *Branch v. Tunnell*, 937 F.2d 1382, 1386 (9th Cir. 1991))).

Accordingly, the Court denies the County Defendants' motion to dismiss Plaintiffs' Section 1985 claim alleging that the SWAT Defendants conspired to use excessive force based on racial animus.

### c.      Failure to Render Aid

The Court finds that Plaintiffs fail to allege facts to support that the alleged conspiracy between all law enforcement officers at the scene to deprive Clark of medical aid was based on racial animus. Specifically, as discussed in Section V(B)(3)(a) relating to Cole, the Court disagrees that a reasonable inference can be drawn from the fact that Defendants' conduct occurred in a county that has allegedly historically discriminated against Black people to establish the requisite racial animus for their Section 1985 claims. Plaintiffs' only allegations relating to racial animus, other than location, are comments made in an isolated space by the SWAT Defendants, who arrived over an hour after the alleged conspiracy's formation. (FAC ¶¶ 106-53.)

Accordingly, the Court dismisses, with leave to amend, Plaintiffs' Section 1985 claim alleging that all of the individual defendants conspired to deprive Clark of aid for his injuries based on racial animus. *Cf. Crowe*, 608 F.3d at 440-41 (finding that an officer was entitled to summary judgment on the plaintiffs' conspiracy claim because, although the officer was allegedly involved in a related conspiracy to coerce a confession from the plaintiffs, the allege

facts failed to demonstrate that the officer "shared the common objective of the larger conspiracy alleged by plaintiffs: a conspiracy to wrongfully prosecute and convict the [plaintiffs]"); *Chavez v. Ill. State Police*, 251 F.3d 612, 646-47 (7th Cir. 2001) (finding that there was not "sufficient evidence to conclude that the three different troopers who stopped [the plaintiff] did so with intent to discriminate" despite one officer's "racially insensitive remarks" because "[the plaintiff] has not proffered any evidence of racial animus on the part of the other officers who allegedly stopped and searched him").

### 3.    Cole

Cole is implicated in two of the alleged conspiracies: (1) the alleged conspiracy with Ferguson to use excessive force against Clark during the initial pursuit and shooting, and (2) the alleged conspiracy between all of the officers at the scene to deprive Clark of medical aid.[9]

Cole moves to dismiss Plaintiffs' conspiracy claims, arguing that Plaintiffs fail to allege facts supporting that he ever reached any agreement, the parties to the alleged agreement, or the nature and purpose of the alleged agreement. (*See* Cole's Mot. at 3-4.)

### a.    Cole's Excessive Force

Plaintiffs argue that their allegations in the FAC support that Cole and Ferguson conspired to use excessive force by jointly pursuing, assaulting, and ultimately shooting Clark.[10]

---

[9] Plaintiffs concede in their briefing that they cannot plausibly allege at this time that Cole was involved in the SWAT Defendants' conspiracy to use excessive force but request additional time to develop this claim through discovery. (*See* Pls.' Opp'n Cole's Mot. at 13.)

[10] Plaintiffs argue that even if they have failed adequately to plead facts to support the racial animus element for a Section 1985 conspiracy claim, the FAC contains sufficient allegations to support a Section 1983 claim and Plaintiffs seek leave to amend their pleadings accordingly. (Pls.' Opp'n Cole's Mot. at 2 n.3, 12.)

(Pls.' Opp'n Cole's Mot. at 9-13.) The Court finds that Plaintiffs have failed adequately to plead facts supporting that Cole participated in a conspiracy motivated by racial animus.

With respect to the alleged conspiracy's formation, Plaintiffs argue that the requisite meeting of the minds can be inferred from the joint actions taken by Cole and Ferguson. (*Id.* at 9-10.) Specifically, Plaintiffs argue that Cole and Ferguson violated department policy and a supervisor's direct order when they jointly pursued Clark, shot at Clark while he was running away, and failed to render medical aid, which together supports a reasonable inference that Cole and Ferguson formed a conspiracy. (*See id.* at 9-11.)

Viewing these factual allegations in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have plausibly alleged that Ferguson and Cole shared an objective to use excessive force against Clark. Specifically, the Court finds that a reasonable jury could infer that the concerted actions between Ferguson and Cole to jointly pursue Clark's vehicle, immediately escalate to using deadly force while pursuing Clark on foot, and fail to render aid after Ferguson shot Clark were acts "unlikely to have been undertaken without an agreement." *Mendocino Env't Ctr.*, 192 F.3d at 1301 (quoting *Kunik v. Racine County*, 946 F.2d 1574, 1580 (7th Cir. 1991)); *Perez v. United States*, 103 F. Supp. 3d 1180, 1213 (S.D. Cal. 2015) ("Direct evidence of improper motive or an agreement among the parties to violate a plaintiff's constitutional rights will only be rarely available. Instead, it will almost always be necessary to infer such agreements from circumstantial evidence or the existence of joint action." (quoting *Mendocino Env't Ctr.*, 192 F.3d at 1302)).

However, the Court finds that Plaintiffs fail to allege facts plausibly to support that Cole's and Ferguson's conduct was motivated by racial animus. Plaintiffs argue that Cole's racial animus can be inferred from his immediate escalation to deadly force "in a county where

black men experienced disproportionate use of force," and from his alleged misconduct after the

shooting. (Pls.' Opp'n Cole's Mot. at 9-13, citing as bases to infer racial animus, *inter alia*,

Cole's "laugh[ing] about shooting Mr. Clark[,] . . . failure to render any aid[,] . . . [and] decision

to turn off the audio on his BWC"). The Court disagrees.

Plaintiffs' allegations relating to the SWAT Defendants included comments made by the

SWAT officers that can reasonably be viewed as racially biased, which supports an inference

that the officers' conduct was motivated by racial animus. Plaintiffs did not include similar

allegations relating to Cole and Ferguson. The Court finds that Plaintiffs fail to allege facts

supporting that Cole's animus was racially motived. *See Prasad v. Santa Clara Dep't of Soc.*

*Servs.*, 685 F. App'x 538, 540 (9th Cir. 2017) ("Generally, without 'some racial, or perhaps

otherwise class-based, invidiously discriminatory animus behind the conspirators' action,' no

action under 42 U.S.C. § 1985 may lie." (quoting *Griffin*, 403 U.S. at 102)); *Sanford*, 2024 WL

4664485, at *3 ("[A] required element of a § 1985 claim is that the plaintiff be a member of a

protected class and the deprivation of civil rights have been motivated by animus toward that

class."); *see also Pettibone v. Biden*, No. 3:20-cv-01464-YY, 2021 WL 6112595, at *15 (D. Or.

Dec. 27, 2021) (dismissing Section 1985 claim against officers who used force against Black

Lives Matter protesters because "at most, Plaintiffs allege a conspiracy to disrupt and prevent

[constitutional] rights and . . . both local and federal law enforcement showed animus to

protestors" but that "[t]he missing link . . . is that this animus was 'racially motivated'"), *rev'd*

*on other grounds*, 59 F.4th 449 (9th Cir. 2023).

Plaintiffs cite *Quinones v. Szorc*, 771 F.2d 289 (7th Cir. 1985) and *Griffin v.*

*Breckenridge*, 403 U.S. 88 (1971) in support of their argument that their allegations are sufficient

to state a Section 1985 claim. (Pls.'s Opp'n Cole's Mot. at 12.) Both cases predate *Iqbal*'s and

*Twombly*'s current pleading standard. Further, both cases present materially different factual circumstances from this case and those plaintiffs alleged sufficient facts from which the court could infer the conspiracy's animus. *See Griffin*, 403 U.S. at 103 (finding that the plaintiffs' allegations that the two defendants used force, violence, and intimidation against the plaintiffs based on the mistaken belief that they were workers for the Civil Rights Movement stated a Section 1985 claim because "the conduct here alleged lies so close to the core of the coverage intended by Congress that it is hard to conceive of wholly private conduct that would come within the statute if this does not"); *Quinones*, 771 F.2d at 291 (finding that the plaintiff adequately alleged racial animus based on the two defendants' association with an opposing political party and repeated threats against the plaintiff followed by an assault based on the plaintiff's support for a Black mayoral candidate). As discussed above, and unlike in *Quinones* and *Griffin*, the Court finds that Plaintiffs have failed to allege specific facts supporting that Cole and Ferguson shared an objective to use excessive force based on racial animus.

Accordingly, the Court dismisses, with leave to amend, Plaintiffs' Section 1985 claim alleging Cole and Ferguson conspired to use excessive force against Clark based on racial animus.

### b.      Failure to Render Aid

For the reasons discussed above, the Court finds that Plaintiffs have failed to allege facts supporting that all individual Defendants shared an intent to deprive Clark of aid for his injuries based on racial animus. Accordingly, the Court grants Cole's motion to dismiss Plaintiffs' Section 1985 conspiracy claim alleging that Defendants conspired to deprive Clark of medical aid based on racial animus.

## VI.    QUALIFIED IMMUNITY

Mawson moves to dismiss all claims against him, arguing he is entitled to qualified immunity from civil liability because his conduct, as alleged, did not violate any of Clark's clearly established constitutional rights. (Mawson's Mot. at 10-12.)

Plaintiffs respond that Mawson inappropriately relies on extrinsic evidence and that they have adequately pled violations of Clark's clearly established constitutional rights. (*See* Pls.' Opp'n Mawson's Mot. at 17.) As a result, Plaintiffs argue that Mawson is not entitled to qualified immunity at this stage of the litigation. (*Id.*)

### A.    Applicable Law

"The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dunn v. Castro*, 621 F.3d 1196, 1198-99 (9th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A qualified immunity analysis consists of two steps. *Id.* at 1199. First, the court must determine "whether the facts alleged, construed in the light most favorable to the injured party, establish the violation of a constitutional right." *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Next, the court must determine "whether the right is clearly established such that a reasonable government official would have known that 'his conduct was unlawful in the situation he confronted.'" *Id.* (quoting *Saucier*, 533 U.S. at 202).

"Qualified immunity is an affirmative defense that must be raised by a defendant." *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (quoting *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001)). The Supreme Court has emphasized that the issue of qualified immunity should be decided "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam) (simplified). However, the Ninth Circuit has instructed that courts

generally should not resolve the issue on a motion to dismiss. *See Keates v. Koile*, 883 F.3d 1228, 1234-35 (9th Cir. 2018) (denying a motion to dismiss on qualified immunity grounds and noting that "[d]etermining claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making"). In deciding qualified immunity on a motion to dismiss, "[i]f the operative complaint 'contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right,' then plaintiffs are 'entitled to go forward' with their claims." *Id.* at 1235 (quoting *Pelletier v. Fed. Home Loan Bank of S.F.*, 968 F.2d 865, 872 (9th Cir. 1992)).[11]

### B.    Analysis

For the reasons stated above, the Court finds that Plaintiffs have plausibly alleged that Mawson's conduct violated Clark's clearly established constitutional rights. *See Guy v. Lorenzen*, 547 F. Supp. 3d 927, 945 (S.D. Cal. 2021) (holding that qualified immunity for officers was "inapplicable" because "it was clearly established that the officers' failure to administer appropriate aid or intervention after the detainee was injured while in police custody gives rise to a substantive due process claim." (citing *Maddox*, 792 F.2d at 1415)). Therefore, Mawson is not entitled to qualified immunity at this stage in the litigation. *See Keates*, 883 F.3d at 1235 (holding that the operative complaint "plausibly allege[d]" the defendants violated the plaintiff's rights and the district court "erred in dismissing" the plaintiff's claim based on qualified immunity); *see also Laizure v. Wash. Cnty. by & through Wash. Cnty. Sheriff's Off.*, No. 3:17-cv-01254-SB, 2018 WL 3638124, at *6 (D. Or. July 13, 2018) (holding that "[the

---

[11] As the Ninth Circuit noted in *Keates*, the "denial of qualified immunity at this stage of the proceedings does not mean [the] case must go to trial." *Keates*, 883 F.3d at 1240 (quoting *O'Brien*, 818 F.3d at 936). Indeed, "[o]nce an evidentiary record has been developed through discovery, defendants will be free to move for summary judgment based on qualified immunity." *Id.* (quoting *O'Brien*, 818 F.3d at 936).

plaintiff] has pleaded sufficient facts to allege violations of his First and Fourth Amendment rights, and therefore resolving the issue of qualified immunity is not appropriate at this stage of the litigation"), *findings and recommendation adopted sub nom.*, *Laizure v. Washington County*, 2018 WL 3636539 (D. Or. July 31, 2018).

## VII. *MONELL* CLAIMS

Plaintiffs assert five claims against Defendant Clackamas County. (*See* FAC ¶¶ 163-89.) Plaintiffs assert three *Monell* claims, alleging that "Defendant Clackamas County has an unwritten custom and culture where the civil rights of non-whites are disregarded[.]" (*Id.* ¶¶ 163-75.) Specifically, Plaintiffs allege that Clackamas County is liable for its officers' use of excessive force, failure to provide medical care, and depriving Plaintiffs of familial association with Clark. (*See id.*) Plaintiffs argue that the existence of Clackamas County's pervasive custom and culture is supported by the following facts:

1) A lawsuit from 1998 awarding "the first Black person hired to work for CCSO . . . substantial damages by a jury after bringing claims for discrimination and retaliation" based on racist comments made to him while he worked at CCSO (Pls.' Opp'n County's Mot. at 20);

2) A 2019 lawsuit "where a CCSO deputy improperly placed his knee on the neck of a then 12-year-old Black child, making it difficult for him to breathe" (*id.*);

3) A 2019 lawsuit "where a person who worked in . . . CCSO alleged that the CCSO had a custom or policy of inaction . . . and alleged that officers of CCSO followed the 'blue wall of silence' to cover up fellow officer's misconduct" (*id.* at 20-21);

4) CCSO "training slide materials used to dehumanize persons of color, including songs describing insensitive stereotypes by race" (*id.* at 21);

5) CCSO use-of-force reports from 2018 to 2022 indicating that Black people were estimated to have made up less than two percent of the County's population but made up between ten and fifteen percent of the people who had force used against them (FAC ¶¶ 20-23);

6) "In 2021, a Clackamas County commissioner faced calls to resign over [Islamophobic] statements he made" (*id.* ¶ 26);

7)    An Oregon Department of Justice report "which determined that bias reports in Clackamas County are up 366% since 2020, and the state of Oregon singled out CCSO for racial disparities in stops performed on Black and LatinX individuals amongst the 51 law enforcement agencies in the state" (Pls.' Opp'n County's Mot. at 21); and

8)    That Clackamas County leadership recently eliminated its equity and inclusion office as "an unnecessary expense that only foments friction, and created a victim mentality." (FAC ¶ 26) (simplified).

The County Defendants move to dismiss Plaintiffs' three *Monell* claims, arguing that Plaintiffs fail sufficiently to allege facts supporting that there is any discriminatory custom or culture within Clackamas County. (*See* County's Mot. at 8-14.) Specifically, the County Defendants argue that "such a broad, generic custom does not plausibly suggest any direct causal link to the incident with Mr. Clark . . . [and] would be akin to *respondeat superior* liability, which *Monell* does not permit." (*See* County's Reply at 4.) The County Defendants further argue that Plaintiffs' statistics are too broad to be relevant and Plaintiffs' cited cases are distinguishable. (County's Mot. at 12-13.)

Plaintiffs respond that their cited facts, statistics, and cases plausibly allege that Clackamas County has a "county-wide, long-standing custom of violating the constitutional rights of non-whites over many years . . . [which] plays into the County's use of force—as seen by the use of force reports over a five-year period that indicates that the County uses more excessive force against Blacks, who represent a small percentage of the County's total population." (*See* Pls.' Opp'n County's Mot. at 22-23.) Further, Plaintiffs argue that Clackamas County's history of allowing its officers to use excessive force against non-whites without consequences directly contributed to the County Defendants' actions and ultimately, Clark's death. (*See id.*)

///

///

PAGE 35 – OPINION AND ORDER

### A.    Applicable Law

"A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)). To state a Section 1983 claim against a local government entity under *Monell*, a plaintiff must allege that (1) the plaintiff was deprived of a constitutional right; (2) the municipality had a policy, custom, or practice; (3) the policy, custom, or practice amounted to deliberate indifference of the plaintiff's constitutional rights; and (4) the policy, custom, or practice was the "moving force" behind the constitutional violation. *See Gordon v. County of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) (quoting *Dougherty*, 654 F.3d at 900). "That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997). "[M]unicipalities may be liable under § 1983 for constitutional injuries pursuant to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton v. City of Santa Maria*, 915 F.3d 592, 602-03 (9th Cir. 2019).

The Ninth Circuit has noted that it historically did "not require[ ] parties to provide much detail at the pleading stage regarding such a policy or custom" to state a *Monell* claim. *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012). However, under the current pleading standards, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Id.* at 637 (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). Further, "the factual allegations that are taken as true must plausibly

suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* (quoting *Starr*, 652 F.3d at 1216).

>    **B.    Analysis**

As described above, the Court finds that Plaintiffs have sufficiently alleged that some of the County Defendants violated Clark's constitutional rights. The Court finds, however, that Plaintiffs fail plausibly to allege the existence of a pervasive practice or custom within the entirety of Clackamas County that caused the alleged violations to Clark's constitutional rights. Specifically, the Court finds that Plaintiffs' alleged unwritten custom and culture throughout the entire county is overbroad and not adequately supported with relevant facts.

Plaintiffs allege facts and provide references to several past incidents involving CCSO conduct, particularly CCSO's use of force, but Plaintiffs do not limit their allegations to a custom and culture within CCSO. Rather, Plaintiffs allege an unwritten custom and culture of disregarding the civil rights of non-whites throughout Clackamas County over the course of nearly thirty years. (FAC ¶¶ 19-30, 164.) The only allegations that arguably support Plaintiffs' claim that an alleged custom and culture exists beyond the CCSO are their allegations that a Clackamas County Commissioner made Islamophobic comments and that the Clackamas County Commissioners recently eliminated the County's equity and inclusion office. (FAC ¶¶ 24, 26.) The Court finds that Plaintiffs fail plausibly to allege facts supporting that disregarding the civil rights of non-whites is "so permanent and well settled [throughout Clackamas County] as to constitute a custom or usage with the force of law." *Monell*, 436 U.S. at 691; *see Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration,

frequency and consistency that the conduct has become a traditional method of carrying out policy.") (simplified).

Accordingly, the Court dismisses, with leave to amend, Plaintiffs' *Monell* claims alleging that Clackamas County is liable for its officers' excessive force, failure to provide medical care, and depriving Plaintiffs of familial association based on an unwritten custom and culture throughout the entirety of Clackamas County.

## VIII.  NEGLIGENCE

Plaintiffs assert two common law claims, alleging Clackamas County is liable for its officers' assault/battery and negligence.[12] (*See* FAC ¶¶ 176-89.) Plaintiffs allege that, to the extent the County Defendants' actions were not intentional, those actions were negligent, and Clackamas County is vicariously liable for the negligence of its officers. (*Id.* ¶¶ 181-89.) In the alternative, Plaintiffs claim that if Clark was deceased when the SWAT Defendants used explosives and a canine, the officers' actions would be considered abusing a corpse in violation OR. REV. STAT. § 166.087 and constitute negligence per se. (*Id.* ¶ 186.)

The County Defendants move to dismiss Plaintiffs' negligence claim because it is based on allegations of intentional acts which cannot give rise to a cognizable negligence claim. (County's Mot. at 14-16.) Further, the County Defendants argue that neither Oregon's wrongful death statute (OR. REV. STAT. § 30.020) nor its survival statute (OR. REV. STAT. § 30.075) provide for claims on behalf of a decedent for injuries that occurred post-mortem.[13] (*See* County's Mot. at 15-16.)

---

[12] The County Defendants do not move to dismiss Plaintiffs' assault/battery claim.

[13] The Court considers Plaintiffs' failure to respond to Defendants' negligence per se arguments as "a concession on the merits," and dismisses that claim with leave to amend. *Yentz v. Nat'l Credit Adjusters, LLC*, No. 3:20-cv-01364-AC, 2021 WL 1277961, at *4 (D. Or. Feb. 15, 2021) (citing *Steger v. Peters*, No. 6:16-cv-02093-YY, 2018 WL 3430671, at *2 (D. Or. July

With respect to the County Defendants' argument that Plaintiffs cannot maintain a negligence claim based on intentional conduct, the Court agrees. *See Lifestyle Ventures, LLC v. County of Clackamas*, No. 3:15-cv-01291-SB, 2016 WL 11394982, at *6 (D. Or. May 18, 2016) (dismissing the plaintiff's negligence claim because "it is improper . . . to incorporate its allegations of intentional misconduct into its negligence claim"), *findings and recommendation adopted*, 2017 WL 384030 (D. Or. Jan. 16, 2017).

As the Court explained in *Lifestyle Ventures*, although a plaintiff may proceed with "both negligence and constitutional claims based on the same operative facts" at the pleading stage, they may not do so based on allegations of intentional conduct. *Id.* at *5-6; *see Rodriguez v. City of Portland*, No. 3:09-cv-00850-KI, 2009 WL 3518004, at *2 (D. Or. Oct. 21, 2009) ("[A]t the initial pleading stage a plaintiff may base claims of negligence under state law and claims of constitutional violations under 42 U.S.C. § 1983 on the same facts."). As in *Lifestyle Ventures*, Plaintiffs inappropriately incorporate their allegations of intentional misconduct into their negligence claim. (*See* FAC ¶ 181, "repeat[ing] and re-alleg[ing] paragraphs 1 through 180"). Accordingly, the Court dismisses Plaintiffs' negligence claim with leave to amend to omit the incorporation of any paragraphs alleging intentional misconduct. *See Lifestyle Ventures*, 2016 WL 11394982, at *6 (dismissing the plaintiff's "negligence claim, without prejudice, and with leave to amend to omit the incorporation of any paragraphs alleging intentional, willful, or malicious misconduct").

---

16, 2018)), *findings and recommendation adopted*, 2021 WL 1270457 (D. Or. Apr. 6, 2021). In any event, Plaintiffs fail to explain whether Clark satisfied the negligence per se requirements that he was a "member of the class of persons meant to be protected by the statute" and that his "injury . . . [was] a type that the statute was enacted to prevent." *Binci v. Alaska Airlines, Inc.*, No. 3:21-cv-01012-YY, 2022 WL 3715223, at *6 (D. Or. Aug. 29, 2022) (quoting *McAlpine v. Multnomah County*, 883 P.2d 869, 873 (Or. Ct. App. 1994)).

## IX.     MOTIONS TO STRIKE

The County Defendants and Cole also move to strike portions of Plaintiffs' FAC.

(County's Mot. at 16-19; Cole's Mot. at 4-5.)

### A.     Applicable Law

Rule 12(f) provides that a "court may strike from a pleading . . . any . . . immaterial,

impertinent, or scandalous matter." FED. R. CIV. P. 12(f). A matter is "immaterial" if it "has no

essential or important relationship to the claim for relief or the defenses being plead." *Petrie v.*

*Elec. Game Card, Inc.*, 761 F.3d 959, 967 (9th Cir. 2014) (quoting *Fantasy, Inc. v. Fogerty*, 984

F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)). "Impertinent

material," on the other hand, "consists of statements that do not pertain, and are not necessary, to

the issues in question." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010)

(quoting *Fantasy, Inc.*, 984 F.2d at 1527). Further, a matter is "scandalous" if "it generally refers

to any allegation that unnecessarily reflects on the moral character of an individual or states

anything in repulsive language that detracts from the dignity of the court." *Ogdon v. Grand*

*Canyon Univ. Inc.*, No. 2:22-cv-00477, 2023 WL 5046242, at *1 (D. Ariz. Aug. 8, 2023)

(quoting *Jud. Watch, Inc. v. U.S. Dep't of Com.*, 224 F.R.D. 261, 263 (D.D.C. 2004)).

Ultimately, "[t]he function of a [Rule] 12(f) motion to strike is to avoid the expenditure

of time and money that must arise from litigating spurious issues by dispensing with those issues

prior to trial." *Whittlestone*, 618 F.3d at 973 (quoting *Fantasy, Inc.*, 984 F.2d at 1527)

(simplified). "The disposition of a motion to strike is within the discretion of the district court."

*Kim v. Beaverton Sch. Dist. 48J*, No. 3:20-cv-02025-SI, 2022 WL 594421, at *1 (D. Or. Feb. 28,

2022) (citing *Fed. Sav. & Loan Ins. Corp. v. Gemini Mgmt.*, 921 F.2d 241, 244 (9th Cir. 1990)).

Courts view with disfavor and infrequently grant motions to strike because striking a portion of a

pleading is a drastic remedy and motions to strike are often "considered purely cosmetic or 'time

wasters,'" 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1382 (3d ed. June 2024 update), and pleadings in federal practice are of "limited importance." Kim, 2022 WL 594421, at *1 (quoting Capella Photonics, Inc. v. Cisco Sys., Inc., 77 F. Supp. 3d 850, 858 (N.D. Cal. 2014)).

### B.    Analysis

The County Defendants and Cole move to strike from Plaintiffs' FAC the "preliminary statement," arguing that it is "redundant, immaterial, impertinent, and/or scandalous." (County's Mot. at 17; see also Cole's Mot. at 4-5.)

The County Defendants also move to strike the following allegations from the FAC on the following grounds: (1) paragraph 24 allegations relating to a Clackamas County Commissioner as irrelevant; (2) paragraphs 30 to 32 allegations relating to Sheriff Brandenburg as irrelevant; (3) all images, image captions, and footnotes throughout the FAC as inconsistent with Rule 8 and therefore immaterial or impertinent; (4) paragraphs 33 and 34 as impertinent and immaterial; (5) all allegations relating to the CCSO policies and the officers' alleged violations as immaterial and impertinent; and (6) "much of the law enforcement commentary described in paragraphs 91 through 154 [a]s immaterial, scandalous, and inflammatory[.]" (County's Mot. at 16-18.)

"[A]llegations that provide background information, historical material, 'or other matter of an evidentiary nature will not be stricken unless unduly prejudicial to defendant.'" Erhart v. BofI Holding, Inc., 269 F. Supp. 3d 1059, 1085 (S.D. Cal. 2017) (quoting In re Facebook PPC Advert. Litig., 709 F. Supp. 2d 762, 773 (N.D. Cal. 2010)); see also Polaris PowerLED Techs., LLC v. Nintendo Co., Ltd., 623 F. Supp. 3d 1132, 1136 (W.D. Wash. 2022) ("Where the moving party cannot adequately demonstrate . . . prejudice, courts frequently deny motions to strike even

though the offending matter literally [was] within one or more of the categories set forth in Rule 12(f).").

With respect to the specific paragraphs subject to the motions to strike, the Court concludes those paragraphs are arguably relevant to Plaintiffs' claims, providing context and background information. *See Maney v. Brown*, No. 6:20-cv-00570-SB, 2021 WL 4449266, at *3 (D. Or. Sept. 28, 2021) (denying motion to strike paragraphs describing actions taken in other jurisdictions around the United States because they provided relevant background); *Menchu v. Multnomah Cnty. Health Dep't*, No. 3:20-cv-00559-AC, 2021 WL 2450780, at *6 (D. Or. May 3, 2021) ("Allegations in a complaint should not be stricken when they provide relevant background information or are 'arguably relevant' to an actionable claim.") (citation omitted), *findings and recommendation adopted*, 2021 WL 2446173 (D. Or. June 14, 2021); *Epstein v. United States*, No. 3:16-cv-02929-BAS (WVG), 2017 WL 4227054, at *4 (S.D. Cal. Sept. 21, 2017) ("[S]triking this material from the [complaint] is unnecessary because the Court regards such material as providing background information only.") (citation omitted); *Dettrich v. Shinseki*, No. 1:10-cv-00434 WBS, 2011 WL 3204729, at *7 (D. Idaho July 26, 2011) ("The court is not convinced that inclusion of these allegations is redundant, immaterial, impertinent, or scandalous. Simply because a particular word, phrase, or fact in a complaint might not entitle plaintiff to recover does not bar plaintiff from asserting additional historical or background information.").

With respect to the images in the FAC, the County Defendants have not explained why the images at issue would be unduly prejudicial. *See Polaris PowerLED Techs.*, 623 F. Supp. 3d at 1136 ("Ordinarily, a motion to strike will not be granted unless the matter has no logical connection to the controversy at issue and may prejudice one or more of the parties to the suit.")

(simplified); 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1218 (3d ed. June 2024 update) ("[U]nless the presence of evidentiary matters is prejudicial or confusing, the pleading or the objected to portions of it should not be ordered stricken.").

Accordingly, the Court denies Defendants' motion to strike. *See Martin v. City of Portland*, No. 3:19-cv-01647-SI, 2020 WL 363391, at *2 (D. Or. Jan. 2, 2020) (noting that motions to strike are disfavored and infrequently granted); *see also Polaris PowerLED Techs.*, 623 F. Supp. 3d at 1136 ("Where the moving party cannot adequately demonstrate . . . prejudice, courts frequently deny motions to strike even though the offending matter literally [was] within one or more of the categories set forth in Rule 12(f).") (simplified).

## CONCLUSION

For the reasons stated, the Court GRANTS IN PART and DENIES IN PART Defendants' motions to dismiss (ECF Nos. 72, 76, 78), and DENIES Cole's and the County Defendants' motions to strike. Plaintiffs shall file a second amended complaint by February 10, 2025.

**IT IS SO ORDERED.**

DATED this 27th day of January, 2025.

HON. STACIE F. BECKERMAN
United States Magistrate Judge