IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| SARAH MILES *et al.*, | Case No. 3:23-cv-01805-SB |
| Plaintiffs, | **OPINION AND ORDER** |
| v. | |
| CLACKAMAS COUNTY *et al.*, | |
| Defendants. | |

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiffs Sarah Miles, appearing as personal representative of the Estate of Derrick Dewayne Clark, Jr. ("Clark"), on behalf of Clark's minor child R.L.C. and minor sibling D.M.M., and in her individual capacity as Clark's mother (together, "Plaintiffs"), allege constitutional claims under 42 U.S.C. §§ 1983 and 1985, and state law claims against Defendants Clackamas County, several individual Clackamas County Sheriff's Office law enforcement officers (together, the "County Defendants"), Oregon State Trooper Zachary Cole ("Cole"), Oregon City Police Officer Alexander Mawson ("Mawson"), and Officers Doe I-X (together, "Defendants"), relating to Clark's death. (*See generally* Second Am. Compl. ("SAC"), ECF No. 100.)

PAGE 1 – OPINION AND ORDER

Now before the Court is the County Defendants' motion to dismiss and to strike portions of Plaintiffs' SAC. (Defs.' Mot. Dismiss & Strike ("County's Mot."), ECF No. 102.) The Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 and 1367, and the parties have consented to proceed before a magistrate judge under 28 U.S.C. § 636. (ECF No. 92.) For the following reasons, the Court grants in part and denies in part the County Defendants' motion.

## BACKGROUND[1]

The facts are more thoroughly discussed in the Court's previous opinion and the Court recites here only the facts relevant to the County Defendants' instant motion. *See Miles v. Clackamas County*, No. 3:23-cv-01805-SB, 2025 WL 305578, at *2-3 (D. Or. Jan. 27, 2025).

Early in the morning on June 18, 2022, Clark was driving a red Pontiac in Clackamas County. *Id.* at *2. Cole was driving behind Clark and activated his red and blue overhead lights to initiate a traffic stop after Clark changed lanes. *Id.* Clark did not pull over, but changed lanes again and drove off. *Id.* Cole did not pursue Clark because it would have violated his training and department policy. *Id.*

After seeing Cole terminate his pursuit, Deputy Daniel Ferguson ("Ferguson") started pursuing Clark in a separate vehicle and notified dispatch that Clark had failed to maintain his travel lane and sped away from Cole. *Id.* Once Ferguson's pursuit began, Cole reactivated his red

---

[1] The Court assumes these facts are true for the purpose of reviewing the pending motions. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007) ("[When] ruling on a defendant's motion to dismiss a complaint [the court] must accept as true all of the factual allegations contained in the complaint.") (simplified); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (noting that when reviewing a motion to dismiss for failure to state a claim, a court must "accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-moving party") (citation omitted); *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) ("With a motion to strike, just as with a motion to dismiss, the court should view the pleading in the light most favorable to the nonmoving party.") (citation omitted).

and blue lights, and the three cars engaged in a high speed chase for approximately two minutes. *Id.* During the chase, a superior officer ordered Ferguson to stop pursuing Clark because it was raining, dark, and Ferguson had failed to provide status updates. *Id.*

At 12:54 a.m., Clark pulled over, then backed his car up to avoid going into a roadside ditch. *Id.* Ferguson intentionally rear-ended Clark twice, sending his car into the ditch. *Id.* Ferguson and Cole exited their vehicles with guns drawn and commanded Clark to "show me your hands." *Id.* Clark exited the Pontiac and began running away from the officers with a gun in his right hand. *Id.* Clark threw the gun away as he ran, never having pointed it in the officers' direction. *Id.* Cole fired his gun once at Clark and then announced "gun, gun, gun." *Id.* Ferguson also began shooting at Clark as he was running away. *Id.* Cole and Ferguson ran after Clark and saw him throw his gun away during the chase. *Id.* Both officers continued shooting at Clark as they pursued him. *Id.* Ferguson fired the eighth shot which hit Clark and caused him to fall to the ground. *Id.* Ferguson reported the incident stating, "shots fired . . . [,] one subject that was running left now [who h]ad a gun . . . [a]nd it looks like he might be hunkered down" across the street near railroad tracks. *Id.* Cole requested that medical personnel come to the scene but neither Cole nor Ferguson rendered aid to Clark. *Id.*

At around 1:00 a.m., several individual County Defendants arrived at the scene but did not render aid to Clark. *Id.* Around 1:30 a.m., officers using a drone confirmed that Clark was lying motionless in his own blood but could not definitively determine whether Clark was alive. *Id.* At 2:15 a.m., the remaining individual County Defendants and Mawson (the "SWAT Defendants") gathered in a nearby commercial parking lot in a Mine Resistance Ambush Vehicle. *Id.* An officer at the scene informed the SWAT Defendants that Clark had been shot and that someone saw Clark move once, but that nobody had seen him move in approximately eighty

PAGE 3 – OPINION AND ORDER

minutes. *Id.* The SWAT Defendants proceeded to use additional force against Clark, including three explosives and a police canine bite, while exchanging comments about how "this ole boy is dead" and that they were "going to do some janky shit and get it done." *Id.* at *2-3. Clark was pronounced dead at 2:53 a.m. *Id.* at *3.

In total, approximately two hours elapsed from when Ferguson shot Clark and when Clark was pronounced dead. *Id.* During that time, Plaintiffs allege that Clark never received any aid and, if Defendants had provided aid, Clark could have survived. *Id.*

## LEGAL STANDARDS

To survive a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## DISCUSSION

In the FAC, Plaintiffs asserted ten claims against three sub-groups of defendants. (*See generally* FAC, ECF No. 26.) Relevant to the instant motion, the Court previously dismissed with leave to amend Plaintiffs' *Monell* claims and state law negligence claims. *See Miles*, 2025 WL 305578, at *18. In the SAC, Plaintiffs replead a negligence claim against Clackamas County, but do not attempt to assert a *Monell* claim. (*See* SAC ¶¶ 168-72.)

The County Defendants move to dismiss Plaintiffs' negligence claim against Clackamas County, arguing that Plaintiffs have failed to cure the deficiencies that the Court previously

PAGE 4 – OPINION AND ORDER

identified. (*See* County's Mot. at 5.) The County Defendants include in their motion to dismiss a motion to strike portions of Plaintiffs' SAC pursuant to Rule 12(f). (*See id.* at 3-6.)

## I.   NEGLIGENCE CLAIM

Plaintiffs assert a common law negligence claim, alleging that Clackamas County is liable for Ferguson's negligence. (*See* SAC ¶¶ 163-72.) The County Defendants move to dismiss Plaintiffs' negligence claim on the ground that it is based on allegations of intentional acts which cannot give rise to a cognizable negligence claim. (County's Mot. at 5.)

### A.   Applicable Law

"[U]nder Oregon law, allegations of intentional conduct do not support a claim for negligence." *Lifestyle Ventures, LLC v. County of Clackamas*, No. 3:15-cv-01291-SB, 2016 WL 11394982, at *5 (D. Or. May 18, 2016) (citations omitted). The Court previously dismissed Plaintiffs' negligence claim "with leave to amend to omit the incorporation of any paragraphs alleging intentional misconduct." *Miles*, 2025 WL 305578, at *18 (citing *Lifestyle Ventures, LLC*, 2016 WL 11394982, at *6).

### B.   Analysis

In their SAC, Plaintiffs allege that "Defendant Ferguson's actions, as detailed in paragraphs 45 through 52, constitute negligence." (SAC ¶¶ 168-69.) Plaintiffs describe their negligence claim as relating "to Defendant Ferguson's actions leading up to him striking Mr. Clark's vehicle, including the failure to follow established policies to terminate pursuit of Mr. Clark, despite Trooper Cole's termination, and ignoring explicit orders to cease pursuit by a supervisor." (Pl.'s Mem. Opp'n Mot. Dismiss ("Pl.'s Resp.") at 9, ECF No. 104.)

The Court previously dismissed Plaintiffs' negligence claim because it "inappropriately incorporate[d] their allegations of intentional misconduct into their negligence claim." *Miles*, 2025 WL 305578, at *18. In the SAC, however, Plaintiffs incorporate in their negligence claim

PAGE 5 – OPINION AND ORDER

only paragraphs that do not include allegations of intentional misconduct. (*Compare* FAC ¶ 181, incorporating "paragraphs 1 through 180" into Plaintiffs' negligence claim, including allegations specifically alleging that Ferguson acted "intentionally" *with* SAC ¶ 168, incorporating only "paragraphs 45 through 52" into Plaintiffs' negligence claim, which describe Ferguson's actions leading up to the confrontation with Clark but do not include any specific allegations of "intentional" conduct). The Court finds that the allegations in paragraphs 45 through 52 support a reasonable inference that Ferguson's conduct was negligent. *See Daniels-Hall*, 629 F.3d at 998 (noting that when reviewing a motion to dismiss for failure to state a claim, a court must "accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-moving party") (citation omitted).

Accordingly, the Court denies the County Defendants' motion to dismiss Plaintiffs' negligence claim on the ground that Plaintiffs base their negligence claim on intentional misconduct. *See Johns v. City of Eugene*, No. 6:16-cv-00907-AA, 2018 WL 634519, at *13 (D. Or. Jan. 30, 2018) ("[T]he same evidence often could support competing inferences of intentional conduct and negligence. And . . . there certainly is no state-law bar to claims based on *the same* (or at least complementary) inferences moving forward together."), *rev'd on other grounds*, 771 F. App'x 739 (9th Cir. 2019); *cf. Castillo v. Bush*, No. 6:22-cv-00684-MK, 2024 WL 3825206, at *13 (D. Or. Aug. 15, 2024) ("[T]he negligence and excessive force claims are not coextensive with one another such that the rationale of those cases should bar a negligence claim. Specifically, Plaintiff's specifications of negligence pertain to [the officer]'s actions leading up to the shooting, including the failure to summon and wait for help, failure to knock and announce, and failure to prioritize the removal of [the plaintiff]. In other words, the

negligence claim here relates to [the officer]'s alleged creation of the risks that led to the confrontation and shooting, while the Section 1983 claim relates to the shooting itself.").

## II.   MOTION TO STRIKE

The County Defendants move to strike allegations in the SAC on the ground that "leaving these allegations in the pleadings will result in 'serious risks of prejudice [ ], delay, and confusion of the issues.'" (County's Mot. at 4, quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).) Specifically, the County Defendants move to strike from the SAC paragraphs 19-34, 97, 101-02, and 158-162, arguing that the allegations in those paragraphs "no longer serve any evidentiary purpose and have no plausible relevance" because the allegations relate to claims and individuals that are no longer part of this case. (*Id.* at 3-5.) The County Defendants further argue that "such allegations . . . pose a strong likelihood of leading to unwarranted and prejudicial inferences if they remain in the case and they run the risk of unnecessarily complicating a trial by requiring introduction of extensive evidence to counter." (*Id.* at 4) (simplified).

Plaintiffs respond that the County Defendants' motion is procedurally improper. (*See* Pls.' Resp. at 3, "Because this Court has already ruled on these specific paragraphs, a motion to strike is inappropriate. The Court could treat the County Defendants' motion as a reconsideration motion. Even if the Court decides not to treat the motion as such, the County Defendants could have moved to strike these allegations at the same time as their prior motion to dismiss the *Monell* claims but failed to do so."; *id.* at 8.) Plaintiffs further argue that the Court should not strike the allegations at issue because they provide background and context, and the County Defendants have failed to establish that the allegations are prejudicial. (*Id.* at 6, 10-13.)

///

///

PAGE 7 – OPINION AND ORDER

### A. Applicable Law

Rule 12(f) provides that a "court may strike from a pleading . . . any . . . immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). A matter is "immaterial" if it "has no essential or important relationship to the claim for relief or the defenses being plead." *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 967 (9th Cir. 2014) (quoting *Fantasy, Inc*, 984 F.2d at 1527)). "Impertinent material," on the other hand, "consists of statements that do not pertain, and are not necessary, to the issues in question." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010) (quoting *Fantasy, Inc.*, 984 F.2d at 1527). Further, a matter is "scandalous" if "it generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." *Ogdon v. Grand Canyon Univ. Inc.*, No. 2:22-cv-00477, 2023 WL 5046242, at *1 (D. Ariz. Aug. 8, 2023) (quoting *Jud. Watch, Inc. v. U.S. Dep't of Com.*, 224 F.R.D. 261, 263 (D.D.C. 2004)).

Ultimately, "[t]he function of a [Rule] 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc.*, 618 F.3d at 973 (quoting *Fantasy, Inc.*, 984 F.2d at 1527) (simplified). "The disposition of a motion to strike is within the discretion of the district court." *Kim v. Beaverton Sch. Dist. 48J*, No. 3:20-cv-02025-SI, 2022 WL 594421, at *1 (D. Or. Feb. 28, 2022) (citing *Fed. Sav. & Loan Ins. Corp. v. Gemini Mgmt.*, 921 F.2d 241, 244 (9th Cir. 1990)).

### B. Analysis

In response to Defendants' motion to strike, Plaintiffs argue that the relevant allegations "provide critical context for Counts 9 (intentional discrimination) and 10 (conspiracy to interfere with civil rights), which involve multiple officers." (Pl.'s Resp. at 4.) Plaintiffs further argue that

the County Defendants "fail to articulate why these allegations are unduly prejudicial."[2] (*Id.* at 6.)

The Court finds that paragraphs 19-34, 101-02, and 160-162 should be stricken from the SAC. Specifically, the Court finds that allowing allegations relating to racist policies, customs, or culture, in the absence of a *Monell* claim, would potentially confuse the issues by suggesting that Plaintiffs have a factual basis to plead a (now-dismissed) *Monell* claim and would prejudice the County Defendants who would be required to answer those allegations. *See Cook v. County of Los Angeles*, No. 2:19-cv-02417, 2021 WL 3163620, at *6 (C.D. Cal. May 26, 2021) (striking the plaintiff's allegations relating to alleged policies of racial discrimination following dismissal of the plaintiff's *Monell* claim because "such allegations are irrelevant and immaterial to [the remaining] claim"); *Thames v. City of Portland*, No. 3:16-cv-01634-PK, 2017 WL 4392044, at *5 (D. Or. Oct. 3, 2017) ("The rationale behind granting a motion to strike is to avoid prejudice to a party by . . . giving the allegation any unnecessary notoriety.") (citation omitted); *Red Sky AG, LLC v. Curry & Co., Inc.*, No. 3:14-cv-01655-TC, 2015 WL 4571246, at *4 (D. Or. July 28, 2015) ("[A] showing of prejudice by the moving party . . . can arise from allegations that evince 'delay or confusion of the issues.'" (citing *SEC v. Sands*, 902 F. Supp. 1149, 1166 (C.D. Cal. 1995))); *cf. Fuentes v. City of Fresno*, No. 1:10-cv-01628, 2011 WL 13247494, at *2 (E.D. Cal. Mar. 22, 2011) ("The FAC pursues claims seeking to impose liability under 42 U.S.C. § 1983 and *Monell*. No California common law or statutory claims remain as a predicate for negligence

---

[2] The Court disagrees with Plaintiffs' argument that the motion to strike is procedurally improper, because the Court's analysis with respect to the potential relevance and prejudice of the allegations in the FAC is different than its analysis with respect to the SAC in light of the different claims and parties at issue.

PAGE 9 – OPINION AND ORDER

or breach of care. As such, references to negligence and duty of care are subject to striking."). Accordingly, the Court strikes paragraphs 19-34, 101-02, and 160-162.

The Court finds, however, that Plaintiffs' allegations in paragraphs 158-59 relate to individual officers' alleged violations of Clackamas County "policy, tactics, training, discipline, and actions[,]" and do not directly relate to an allegedly racist policy or custom. (SAC ¶¶ 158-59.) Accordingly, the Court denies the County Defendants' motion to strike paragraphs 158-59 on the ground that they relate to Plaintiffs' previously dismissed *Monell* claim alleging a racist policy, custom, or culture within Clackamas County.

With respect to Plaintiffs' allegations relating to individuals who are no longer named as defendants, the Court finds that those allegations are immaterial or impertinent. Specifically, the individuals identified in paragraphs 97 and 159(c) are no longer parties to this case and are not directly implicated in Plaintiffs' current claims against Clackamas County. Accordingly, the Court strikes paragraphs 97 and 159(c) as not relevant or important to issues remaining in this case. *See Bio Energy (Wash.), LLC v. King County*, No. 2:23-cv-00542, 2024 WL 2922798, at *3 (W.D. Wash. June 10, 2024) ("There is no discernable relevance to the allegations in Paragraph 137 now that the Court has held that [a non-party] is not a necessary party; those allegations thus have no place in the second amended complaint."); *Toni v. Washoe Cnty. Sch. Dist.*, No. 3:23-cv-00229, 2024 WL 643044, at *3 (D. Nev. Feb. 15, 2024) (striking as immaterial or impertinent allegations relating to non-parties because "[t]hese individuals are not parties to this case, so what they did or did not do is immaterial"); *Cook*, 2021 WL 3163620, at *7 (striking the plaintiff's allegations relating to a party that "is not a defendant to th[e] action" because those allegations are "immaterial and irrelevant").

///

Accordingly, the Court grants the County Defendants' motion to strike paragraphs 19-34, 97, 101-02, 159(c), and 160-62.[3] The Court denies the County Defendants' motion to strike paragraph 158 and the remaining portions of paragraph 159.

## CONCLUSION

For the reasons stated, the Court GRANTS IN PART and DENIES IN PART the County Defendants' motion to dismiss and to strike (ECF No. 102). Plaintiffs shall file a new version of their second amended complaint (i.e., without paragraphs 19-34, 97, 101-02, 159(c), and 160-62) by May 29, 2025.

**IT IS SO ORDERED.**

DATED this 22nd day of May, 2025.

HON. STACIE F. BECKERMAN
United States Magistrate Judge

---

[3] If Plaintiffs discover a factual basis to reassert their *Monell* claim or claims against any dismissed defendant, they may seek leave to amend their complaint and restore the stricken paragraphs at that time.

PAGE 11 – OPINION AND ORDER