**Billy J. Williams**, OSB No. 901366
County Counsel
bwilliams@clackamas.us
**Scott C. Ciecko**, OSB No. 045587
Assistant County Counsel
sciecko@clackamas.us
2051 Kaen Road
Oregon City, OR 97045-1819
Phone: 503-655-8362
Fax: 503-742-5397
Of Attorneys for County Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| SARAH MILES, as Personal Representative of the Estate of Derrick Dewayne Clark Jr; and SARAH MILES in her individual capacity,<br><br>Plaintiffs,<br><br>v.<br><br>CLACKAMAS COUNTY, a municipal corporation; et al,<br><br>Defendants. | Case No. 3:23-cv-01805-SB<br><br>**CLACKAMAS COUNTY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL IRB REPORT AND COMMUNICATIONS** |

Plaintiffs' motion to compel (Doc. 144) is at least the third time in this case that plaintiffs have asked this Court to require production of attorney-client privileged communications and/or attorney work product. Plaintiffs previously attempted to obtain defense attorneys' joint defense communications, and also attempted to depose a County designee about the legal bases for their affirmative defenses. Now, plaintiffs ask this Court to order production of a legal memorandum drafted by counsel to his client representatives, as well as communications to and from counsel about that same

Page 1     CLACKAMAS COUNTY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL IRB REPORT AND COMMUNICATIONS

privileged document. Just as this Court previously rejected plaintiffs' efforts to obtain privileged communications and work product, this motion to compel should be denied.

**I. The IRB report and the communications regarding the report are privileged and/or are work product.**

There should be little doubt that the CCSO's Incident Review Board ("IRB") report is a privileged communication and is attorney work product. The report is drafted by County Counsel, to the Sheriff and the Undersheriffs, for the specific purposes of evaluating the facts of critical incidents that are reasonably likely to result in litigation, analyzing the effect that existing policies, training, and procedures had on the incident, and providing legal advice including risk assessment and remedial measures. *See generally* Exhibit C and D to *Hamoudi Dec'l*. (Doc. 145). The report itself is from counsel, signed by counsel, on counsel letterhead, and contains the following statement:

> This document is created at the direction, and upon the advice, of legal counsel and in anticipation of forthcoming litigation. This document is also intended to evaluate and identify subsequent remedial measures within the Clackamas County Sheriff's Office. This document is a privileged communication between attorney and client representatives for the purpose of providing professional legal services, and it contains opinions and impressions that are confidential work product not subject to public distribution. Pursuant to ORS 181A.795 (admissibility of conclusions and recommendations), conclusions and recommendations for future actions made by or for a law enforcement agency that result from activities conducted pursuant to ORS 181A.780(4)(e) are not admissible as evidence in any subsequent civil action or administrative proceeding.

*Ciecko Dec'l.*, ¶3. In the foregoing ways, the IRB report is not substantively different from the report at issue in *Greer v. County of San Diego*, 127 F.4th 1216 (9th Cir. 2025); *see also Garza v. County of San Bernadino*, Case No. 5:23-cv-01849-CBM-SP, 2025 WL 1126513 (C.D. Cal., March 5, 2025).

As the Ninth Circuit explains in *Greer*, both gathering and reviewing the facts of past critical incidents, as well as offering recommendations on potential fixes that could avoid the occurrence of "future liability-creating events," are fundamental parts of providing legal advice. *Greer*, 127 F.4th at 1224-1225. The Ninth Circuit went so far as to explain that the district court's finding that legal advice was not the primary purpose of the San Diego County Sheriff's Department review was, "'illogical, implausible, [and] without support in the record.'" *Greer*, 127 F.4th at 1225, quoting *United States v. Sanmina Corp.*, 968 F.3d 1106, 1116 (9th Cir. 2020). The court went on to state that:

> When an inmate dies in custody from non-natural causes, *or when another "critical incident" occurs*, litigation is almost guaranteed to follow. Consulting with a lawyer and with the relevant members of management, along with other employees who have knowledge of the incident, is the natural next step for any entity facing a high probability of being sued.

*Greer*, 127 F.4th at 1225-1226 (emphasis added). The CCSO's IRB convenes and reviews critical incidents for precisely the same reasons as—and seemingly in a similar manner to—the CIRB in in San Diego County. As a result, this Court should reach the same conclusion as the Ninth Circuit did and find the report and the related communications are privileged.

Plaintiffs attempt to distinguish *Greer,* but the distinctions are conclusory and lack substance. *See Ptf. Mtn. to Compel* (Doc. 144), pp. 8-9. Plaintiffs first assert that the IRB makes only recommendations on "future training or safety measures." *Id*. But that attempted distinction ignores *Greer's* holding that advising on how to improve processes and avoid future liability is a fundamental part of providing legal advice. Plaintiffs further conclude, without factual support, that CCSO subject matter experts are not dismissed prior to legal counsel offering legal opinions. *Ptf. Mtn. to Compel*, p. 9. Even if this were

Page 3    CLACKAMAS COUNTY DEFENDANTS' RESPONSE TO PLAINTIFFS'
         MOTION TO COMPEL IRB REPORT AND COMMUNICATIONS

true, it is unclear how that would result in loss of privilege as *Greer* specifically approves of legal counsel consulting with relevant members of the agency as a "natural next step" after a critical incident occurs. *Greer*, 127 F. 4th at 1225-1226. Last, plaintiffs argue that because the IRB reports are sent to the Sheriff and Undersheriffs rather than to legal counsel, the privilege does not apply. *Ptf. Mtn. to Compel*, p. 9. Although this is true in that the CCSO IRB report is drafted by counsel and sent to the client, it is unclear why that procedure would make the report lose its privileged nature, or what counsel would do with such a document if not share it with the client.

Ultimately, what matters in analyzing whether the CCSO's IRB report is privileged is "how the [ ]IRB actually operates." *Greer*, 127 F.4th at 1225. On this point it should be clear that the CCSO IRB's fundamental purpose is rendering and obtaining legal advice, communications, and opinions, from a professional legal advisor, provided to their client, made in confidence, that are protected from disclosure, unless the protection is waived. *See Greer*, 127 F.4th at 1224, quoting *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010). Such clarity is demonstrated in the policies and procedures produced by plaintiffs, but also in the declarations in support of this response. *See generally Brandenburg Dec'l.*; *Ciecko Dec'l.* submitted herewith. Those materials support the conclusion that the IRB report and related communications are privileged because, like in *Greer*, "[t]he situation here differs markedly from cases in which the protections of the attorney-client privilege have been rejected." *Greer*, 127 F.4th at 1225, citing *United States v. ISS Marine Servs., Inc.,* 905 F. Supp. 2d 121, 129–30 (D.D.C. 2012) (rejecting a claim of attorney-client privilege where the report at issue was completed without any input whatsoever from counsel, where the audit in

question was designed specifically to assist in making a business decision, and where the report was not sent to counsel until two months after completion).

## II. Attorney work-product doctrine precludes disclosure of the IRB report.

Although not decided in *Greer*, County Defendants maintain that the work product doctrine also precludes compelled disclosure of the IRB report. The doctrine and its purposes are described by the Ninth Circuit in *United States v. Sanmina Corp.*, 968 F.3d 1107 (9th Cir. 2020):

> The work-product doctrine is a "qualified" privilege that protects "from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3)); *see also United States v. Nobles*, 422 U.S. 225, 237–38, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case," and protects both "material prepared by agents for the attorney as well as those prepared by the attorney himself." *Nobles*, 422 U.S. at 238–39, 95 S.Ct. 2160. The primary purpose of the work-product rule is to "prevent exploitation of a party's efforts in preparing for litigation." *Admiral Ins. Co.*, 881 F.2d at 1494.

*Sanmina Corp.*, 968 F.3d at 1119 (citations in original). With this explanation, the IRB report should be protected from production as attorney work product.

As described above, the primary purpose of the IRB and the resulting report is provision of legal advice based on the occurrence of a critical incident that results in a "high probability" of ensuing litigation. *Greer*, 127 F.4th at 1226. Additionally, the report is drafted by counsel to the client, and it contains legal advice assessing the incident itself as well as recommendations about any measures that might be taken to avoid similar high-risk incidents the future. The report necessarily contains the attorney's mental impressions about the incident and legal analysis to be utilized in a lawsuit should one materialize.

Page 5    CLACKAMAS COUNTY DEFENDANTS' RESPONSE TO PLAINTIFFS'
            MOTION TO COMPEL IRB REPORT AND COMMUNICATIONS

Because the IRB only convenes to review critical incidents that are likely to result in litigation, it can "fairly be said" that the resulting report was created "because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation." *In re Grand Jury Subpoena (Mark Torf/Tor Environmental Mgmt.)*, 357 F.3d 900, 908 (9th Cir. 2004), quoting *United States v. Adlman*, 134 F.3d 1194, 1195 (2nd Cir.1998). "The 'because of' standard does not consider whether litigation was a primary or secondary motive behind the creation of a document. Rather, it considers the totality of the circumstances." *Id*. As to the IRB report, the totality of the circumstances demonstrate that it would not be created in substantially the same form—by an attorney for the purpose of rendering legal advice— were it not for the threat of litigation. Sheriff Brandenburg indicates as much in her declaration when she explains that if she were not seeking legal advice there would be no need for counsel involvement. *Brandenburg Dec'l.*, ¶¶4-5.

In light of the foregoing, this Court should conclude that the IRB report is protected by the attorney work-product doctrine.

**III. County Defendants have not waived the privilege.**

Plaintiffs argue that County Defendants waived privilege as to the IRB report for two reasons. First, plaintiffs assert the privilege is waived because the IRB report and related communications were shared with CCSO employees who did not "need to know" about the report's contents. *Ptf. Mtn. to Compel*, p. 9. Second, plaintiffs assert the privilege was waived because the privilege log does not contain sufficient description of the withheld items. *Ptf. Mtn. to Compel*, pp. 9-10. This Court should reject both arguments.

As to plaintiffs' first argument, the scope of attorney-client privilege with respect to corporations and other organizations is well-established since *Upjohn Co. v. U.S.*, 449 U.S. 383 (1981). In that case, the U.S. Supreme Court rejected a narrow scope of the privilege in organizations and found that communications that were "made by Upjohn employees to counsel for Upjohn acting as such, at the direction of corporate superiors in order to secure legal advice from counsel," were within the scope of the privilege. *Upjohn*, 449 U.S. at 394. Likewise, the Supreme Court made clear that a corporate attorney must be able to relay privileged legal advice to even lower-level employees because they will often be the ones to put the advice into effect. *Upjohn*, 449 U.S. at 392. *Upjohn* is utilized by the Ninth Circuit and specifically applies to government bodies including counties. *See e.g. Greer*, 127 F.4th at 1227.

Plaintiffs ignore *Upjohn* and instead cite to the *Restatement (Third) of the Law Governing Lawyers* for the proposition that only employees who "need to know" of a privileged communication can be privy to it without waiver. *Ptf. Mtn. to Compel*, p. 9. Plaintiffs do not explain how the "need to know" test might be applied, nor do they cite any cases applying it. The only Ninth Circuit appellate case that seemingly considers the standard is the *Greer* case, wherein it is only the dissent that discusses it. *Greer*, 127 F.4th at 1237. County Defendants urge this Court not to rule based on the dissent in *Greer*, and rather to comport with well-established legal principles set forth in *Upjohn*.

Applying *Upjohn*, there is no waiver when counsel shares the contents of the IRB report with the other IRB members. Those members consist exclusively of CCSO staff who are assigned by the Sheriff, to participate on the Board in furtherance of creating "a comprehensive after-action report prepared by the Office of County Counsel." <u>Exhibit C</u>,

p. 1 to *Hamoudi Dec'l.* (Doc. 145); *Brandenburg Dec'l.*, ¶3. It is essential for legal counsel to share the report with the other IRB members because they are the client's police practices experts. For counsel to provide meaningful legal advice, it is necessary to understand the client's practices to analyze whether they comply with the law or need to be updated in some manner. Accuracy of the report on topics like training, policy, and tactics is key and requires involvement of all IRB members as legal counsel cannot reasonably do that alone.

As an example, in order for counsel to advise about whether a use of force is reasonable, it is necessary to understand not only the facts of the specific incident, but also the training provided regarding the available force options, the policies governing the various force options, and the tactical decisions at issue. *Ciecko Dec'l.*, ¶4. The same is true for providing legal advice about changes that should be implemented, if any, to avoid future similar incidents because those will ultimately be put into practice by CCSO staff. *Ciecko Dec'l.*, ¶5. This process cannot occur in a vacuum without direct input and communication from CCSO staff assigned by the Sheriff to work with counsel, which are precisely the communications that occur during and as a result of the IRB. *Ciecko Dec'l.*, ¶5.

Communication between counsel and IRB participants described above is the situation contemplated in *Upjohn*. See *Upjohn*, 449 U.S. at 390-391 ("privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice."). In the foregoing ways it appears that even plaintiffs' narrow "need to know" standard would permit counsel to share the IRB report with CCSO subject matter experts. The

CCSO staff on the IRB "need to know" about the report's contents to ensure its accuracy and feasibility. Absent their participation the report would be rendered largely pointless.

As to plaintiffs' argument that a deficiency in the privilege log amounts to a waiver, this Court should reject that argument. A privilege log is sufficient if it identifies "(a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated." *Wickersham v. Eastside Distilling, Inc.*, 692 F.Supp.3d 1052, 1069 (D. Or., Sept. 14, 2023), quoting *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992). Plaintiffs do not explain why the log does not comply with these requirements and instead assert in a conclusory manner that the document description is vague and does not allow them to assess the privilege claims. *Ptf. Mtn. to Compel*, pp. 9-10. County Defendants maintain that the log precisely meets what is required in the Ninth Circuit by providing a brief description of each document withheld, and the log lacks any deficiency that would warrant the severe remedy of waiver of privilege. By providing the information required, there is no waiver. And even if this Court concludes the descriptions should be more specific, a reasonable remedy would be to order County Defendants to clarify rather than finding otherwise valid privilege is waived.

**IV.    Sanctions are neither required nor warranted.**

First, as discussed above, County Defendants maintain that they remain in compliance with discovery rules, they have diligently and in good faith engaged in

extensive discovery including producing over 30,000 pages of materials to plaintiffs, and that their withholding of the IRB report and related communications is a valid invocation of privilege and the work product doctrine. If this Court agrees, then there is no basis for sanctions. To the extent this Court might conclude that any of the withheld materials should be produced, there are still not sufficient grounds for sanctions.

Plaintiffs miss the mark in their analysis of applicable rules for at least two reasons. First, plaintiffs broadly cite FRCP 26(g)(1) for their assertion that "[c]ounsel is required to certify that all discovery responses are complete and accurate." *Ptf. Mtn. to Compel*, p. 11. Of course, undersigned counsel does not contest the general principle that attorneys must engage in fair and accurate communications with opposing counsel in all contexts of a lawsuit; however, plaintiffs mistakenly conflate two distinct subsections of FRCP 26 as support for their request for sanctions.

FRCP 26(g)(1) references certification generally, but the "complete and correct" language relied upon by plaintiffs comes from 26(g)(1)(A), which pertains to pretrial disclosures. *See also Notes of Advisory Committee on Rules—1993 Amendment* ("the signature on the initial or pretrial disclosure is a certification under subdivision (g)(1) that it is complete and correct as of the time when made."). Instead, it is 26(g)(1)(B) that applies to responses to the discovery requests at issue in this motion. That subsection indicates an attorney's signature on a response to a discovery request is a certification that the response and any objections are nonfrivolous, are not made for an improper purpose such as delay, and are reasonable in light of the needs of the case. FRCP 26(g)(1)(B)(i)-(iii). County Defendants maintain that their communications with plaintiffs has at all times been fair, accurate, and in good faith. County Defendants further

maintain that their responses to plaintiffs' discovery requests fully comply with FRCP 26(g)(1)(B)(i)-(iii) and do not warrant sanctions.

The second reason that plaintiffs' request for sanctions should be denied is because, even if this Court were to find County Defendants somehow violated an applicable rule, the County Defendants' actions have at all times been with "substantial justification." FRCP 26(g)(3). Plaintiffs omit the "substantial justification" language from their motion (*Ptf. Mtn. to Compel*, p. 11), but it is a material part of the rule and a requirement in the Court's analysis of whether sanctions should be imposed. The term "substantial justification" has been described by the U.S. Supreme Court to generally require reasonableness rather than "justifi[cation] to a high degree." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citations omitted). County Defendants maintain that at all times throughout this proceeding—including specifically with regards to the IRB report—they have acted in good faith and with a "reasonable basis in both law and fact." *Id.* (citations omitted). For this reason, the sanctions requested by plaintiffs are neither warranted nor required.

### V. Plaintiffs' recitation of facts is inaccurate and/or incomplete.

To the extent the facts asserted by plaintiffs are pertinent to this Court's ruling, County Defendants offer several clarifications or corrections.

Although plaintiffs correctly indicate that the IRB examines training and policy, plaintiffs fail to recognize that the IRB does so from a legal perspective to assess liability and evaluate how to mitigate risks of future critical incidents. *Brandenburg Dec'l.*, ¶4; *Ciecko Dec'l.*, ¶6. This is precisely why the Sheriff ensures County Counsel participates in every IRB and authors every IRB report. *Brandenburg Dec'l.*, ¶4; *Ciecko Dec'l.*, ¶6.

Obtaining frank, meaningful legal advice without the chilling effect of creating a publicly available report is in fact the primary purpose of the IRB—were that not the case, there would be no need for counsel involvement. *Brandenburg Dec'l.*, ¶5; *Ciecko Dec'l.*, ¶7.

Contrary to plaintiffs' assertion, Sergeant Grant Zaitz, who was involved in SWAT operations during the Clark incident, did not participate in the IRB review of the incident. *Brandenburg Dec'l.*, ¶6; *Ciecko Dec'l.*, ¶8.

The IRB report is not developed by the entire IRB together, it is authored by counsel and then circulated to other IRB members to ensure it is accurate. *Brandenburg Dec'l.*, ¶7; *Ciecko Dec'l.*, ¶9. The report is circulated to other IRB members because they are the CCSO staff who will ultimately be responsible for implementing any changes that are recommended and it is important to ensure that the report includes feasible recommendations that if at all possible can be put into action. *Brandenburg Dec'l.*, ¶8; *Ciecko Dec'l.*, ¶10.

County Defendants expressly and specifically objected to producing any attorney-client privileged communications and any attorney work produce materials in response to plaintiffs' broad requests for production—the IRB report is precisely such a communication. *Ciecko Dec'l.*, ¶11; see also <u>Exhibit G</u>, pp. 2-3 to *Hamoudi Dec'l*. (Doc. 145). None of plaintiffs' requests for production or informal inquiries asked for the IRB report despite plaintiffs having been provided with a copy of the IRB policy on or about September 23, 2024, over a year prior to taking the County's FRCP 30(b)(6) deposition. *Ptf. Mtn. to Compel*, p. 5; *Ciecko Dec'l*, ¶12.

Undersigned counsel truly and accurately responded to plaintiffs' email about internal affairs investigations by indicating there were none in response to the Clark

incident or the other officer involved shootings identified by plaintiffs. *Ciecko Dec'l*, ¶13; Exhibit G, pp. 2-3 to *Hamoudi Dec'l*. The IRB review is not an internal affairs investigation, as the latter occur within the CCSO's Professional Standards Unit ("PSU") to determine whether a specific employee violated CCSO policy. *Brandenburg Dec'l.*, ¶9. The IRB, in contrast, is not intended to assess whether there has been a policy violation, but rather to evaluate whether policies, trainings, or other aspects of CCSO practice are compliant with the law, should be updated to reduce liability risks, and generally consistent with best practices. *Brandenburg Dec'l.*, ¶10.

To the extent plaintiffs did not learn about the IRB report involving Mr. Clark until October of this year, that is not attributable to County Defendants. Plaintiffs chose when to conduct the 30(b)(6) deposition, and in fact voluntarily cancelled its prior setting in July. *Ciecko Dec'l.*, ¶14. When plaintiff conducted the deposition, the County designee answered all questions about the IRB—other than those that would have disclosed the content of attorney-client communications—and openly acknowledged the IRB convened to review the Clark OIS. *See generally* Exhibit A to *Hamoudi Dec'l*.

### CONCLUSION

For all of the reasons discussed above, County Defendants respectfully request this Court to deny plaintiffs' motion to compel and their request for sanctions.

Dated this 20th day of November 2025.

    BILLY J. WILLIAMS
    CLACKAMAS COUNTY COUNSEL

    /s/ Scott C. Ciecko
    Scott C. Ciecko, OSB No. 045587
    E-mail: sciecko@clackamas.us
    Of Attorneys for Clackamas County
    Defendants

# CERTIFICATE OF COMPLIANCE WITH LR 26-3(b)

This brief complies with the applicable word-count limitation in LR 26-3(b) because, although it contains approximately 3,712 words, prior approval from the Court to exceed the word-count limit was obtained by the order at docket no. 152.

Dated this 20th day of November 2025.

BILLY J. WILLIAMS
CLACKAMAS COUNTY COUNSEL

/s/ Scott C. Ciecko
Scott C. Ciecko, OSB No. 045587
Assistant County Counsel
E-mail: sciecko@clackamas.us
Of Attorneys for Clackamas County Defendants

**CERTIFICATE OF SERVICE**

      I hereby certify that on this date I filed the foregoing CLACKAMAS COUNTY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL IRB REPORT AND COMMUNICATIONS with the court's electronic filing system, which will serve copies on all counsels of record.

      Dated this 20th day of November 2025.

BILLY J. WILLIAMS
CLACKAMAS COUNTY COUNSEL

/s/ Scott C. Ciecko
Scott C. Ciecko, OSB No. 045587
Assistant County Counsel
E-mail: sciecko@clackamas.us
Of Attorneys for Clackamas County Defendants